BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### OCTOBER TERM, 1895.

---

JOHN C. SUESS *et ux*, Appellants, v. IMPERIAL LIFE
    INSURANCE COMPANY, Respondent.

Kansas City Court of Appeals, December 2, 1895.

1. **Life Insurance:** REFUSAL TO RECEIVE PREMIUM: MEASURE OF DAM-
AGES. If an insurance company wrongfully terminates the contract
by refusing to receive the premium when it is due, the assured has a
right to treat the policy as at an end and recover all the money he
has paid under it with interest. *Smith v. Life Insurance Company*, 64
Mo. 330, *distinguished.*

2. **Trial Practice:** INSTRUCTION: SUBMITTING ISSUE OUTSIDE OF THE
CASE: WAIVER. An instruction in this case submitting the question
of waiver to the jury was outside of the issues of the case and re-
versible error, as is also an instruction as to the steps taken by
plaintiff to recover his policy of insurance.

3. ———: MEASURE OF DAMAGES: INSTRUCTION FOR NOMINAL. While an
instruction for nominal damages may not be reversible error where
the verdict was for the defendant, it was an unfortunate one for the
plaintiff in this case and with errors appearing in the opinion author-
izes a reversal of the judgment.

Suess v. Life Insurance Co.

ON MOTION FOR REHEARING.

4. ——: ——: ——. On rehearing, *McKee v. Insurance Co.*, 28 Mo. 383, is adhered to and *Rumbold v. Insurance Co.*, 7 Mo. App. 71, is *distinguished.*

*Appeal from the Carroll Circuit Court.*—HON. JAS. GIBSON, Acting Judge.

REVERSED AND REMANDED.

*J. W. Sebree* and *James McPhetridge* for appellant.

(1) Plaintiff was entitled to have the jury properly instructed, although this court may believe that the result on a new trial would be the same. *Cravens v. Gilliam*, 63 Mo. 33, latter part of opinion. (2) Plaintiff's first instruction should have been given. The Missouri courts have held that the proper measure of damages for a wrongful forfeiture of a life policy is the amount of premiums paid with interest. *McKee v. Ins. Co.*, 28 Mo. 383; *Tutt v. Ins. Co.*, 19 Mo. App. 681, and cases cited. Many courts outside of Missouri hold that in such case the measure of damages is within the discretion of the jury, if not excessive. *Life Ins. Co. v. Fitzgerald*, W. & W. Texas, 784; Cook on Life Ins., pp. 251 and 252, par. 132, and notes and authorities cited. (3) The second instruction given defendant is not the law. It was misleading and raised a false issue in the case. The privilege given plaintiff in the second clause of the policy to renew it in sixty days by furnishing certificate of good health, etc., was for the benefit of plaintiff exclusively, and having failed to avail himself of the privilege conferred by that clause, in no wise precluded plaintiff of the right to recover damages for a wrongful forfeiture under the first clause of the policy. There was no proof or pretense in the case that the plaintiff availed himself of the right to revive the policy under the second clause, and if he

did not have to, that instruction was wrong and misled the jury. (4) The giving of the fifth instruction for defendant was error. To tell the jury that if they found for plaintiff, his measure for damages would be one cent, was misleading and practically in effect instructed the plaintiff out of court. The authorities, *supra.*

*Morton Jourdan, Virgil Conkling,* and *L. C. Krauthoff* for respondent.

(1) Plaintiff's instructions 1 and 2 were properly refused. *Smith v. Life Ins. Co.,* 64 Mo. 330. The *McKee* case, cited by appellants, is an *obiter dictum* of nearly forty years ago, and is not the law of Missouri. The rule for which appellants are contending, if it ever existed, ceased to be the law twenty years ago. *Smith v. Insurance Co.,* 64 Mo. 330; *Rumbold v. Penn Mutual Co.,* 7 Mo. App. 73; *Insurance Co. v. Statham,* 93 U. S. 24; *Insurance Co. v. Twining,* 12 Kan. 475; *Speer v. Ins. Co.,* 36 Hun, 322; *Standley v. N. W. Mutual Life Co.,* 95 Ind. 254; *Life Ins. Co. v. Houser,* 111 Ind. 266; *Insurance Co. v. Schultz,* 82 Pa. St. 46; *Clemmitt v. Life Ins. Co.,* 76 Va. 355; *Life Ins. Co. v. Weck,* 9 Ill. App. 358; *Lovell v. Mutual Ins. Co.,* 111 U. S. 264; 2 May on Insurance, sec. 569, p. 1310; *Day v. Insurance Co.,* 45 Conn. 480; Cooke on Life Insurance, sec. 132, p. 252. (2) The second instruction asked by plaintiff can not be seriously defended. The jury should not be permitted to grope in the dark in assessing damages. *Williams v. Iron Co.,* 30 Mo. App. 667; *Wilburn v. Railroad,* 36 Mo. App. 216; *Flynt v. Railroad,* 38 Mo. App. 98; *Kick v. Doerste,* 45 Mo. App. 140. (3) Defendant's second instruction correctly declares the law, and was properly given. R. S. 1889, sec. 2303; *Toovey v. Baxter,* 59 Mo. App. 476. (4) Under any possible

view of the case as made, plaintiff was only entitled
to nominal damages. *Morrison v. Yancey*, 23 Mo. App.
675; *Addington v. Cullinant*, 28 Mo. App. 238; *Breen v.
Fairbank*, 35 Mo. App. 216. (5) The verdict being
for defendant, plaintiff's measure of damages is no
longer a material question. *Patterson v. McClanahan*,
13 Mo. 508; *Coppersmith v. Railroad*, 51 Mo. App. 358;
*Marcly v. Shults*, 29 N. Y. 346, 356; 2 Thompson on
Trials, sec. 2403, p. 1751. (6) Upon the admitted fact
plaintiff is not entitled to recover. *Gale v. Insurance
Co.*, 33 Mo. App. 664; *Summers v. Insurance Co.*, 45
Mo. App. 46.

ELLISON, J.—This action is based on a petition
for damages alleged to have occurred to plaintiff, by
reason of defendant's having refused to receive further
premiums on a life insurance policy for $3,000, paya-
ble to the wife of the insured at his death, and in
declaring said policy forfeited. The trial below result-
ed in a verdict for defendant.

Plaintiff's appeal is based on an instruction re-
fused for him, which related to the measure of dama-
ges, and on the instructions given for defendant over
his objection. The facts here necessary to state were,
that defendant issued its life policy to plaintiff con-
taining the following clauses:

"This policy witnesseth that the Imperial Life
Insurance Company, in consideration of the statements
and agreements in the application for this policy, which
are hereby made a part of this contract, and the further
consideration of the payment of $37.50, that amount
being the premium for six months' insurance, begin-
ning at 12 o'clock noon on the fifteenth day of Octo-
ber, 1889, said insurance expiring at 12 o'clock noon
on the fifteenth day of April, 1890, on the life of John
G. Suess, * * * does hereby promise to pay to

Florence A. Suess, his wife, at its office in Detroit, Michigan, the sum of $3,000 within ninety days after proofs of the death of the said insured under this policy. * * * And the said company agrees and consents to the renewal of this insurance through another equal term and equal ensuing terms, upon the condition that the insured shall pay, on or before 12 o'clock noon on the last day of the expiring term during the continuance of this contract, the semiannual premium required. * * *

"Clause 2. That the renewal of the term for which this policy is issued will wholly depend upon the payment of the proper premium on or before twelve o'clock noon of the last day of the expiring term, and that, upon nonpayment of the premium for renewal, this policy shall then cease and the company shall not be liable for the payment of the sum insured or any part thereof.

"Clause 3. If this policy should not be renewed at the end of the term, it may be revived within sixty days thereafter, upon the insured furnishing a certificate of health from an accredited medical examiner of this company, with the payment of the proper premium, provided that none of the conditions or agreements contained herein, or in said application, have been violated."

There was evidence in plaintiff's behalf, tending to show that he duly paid the premium for several years at the end of each six months period up to and including April 15, 1892, when, on the latter date, the defendant without cause refused to receive the premium due for the then ensuing six months, but wrongfully declared said policy void and of no further effect. Under this state of evidence in plaintiff's behalf, he asked an instruction authorizing the jury to allow as his damages the sum of the several premiums

which he had paid defendant, together with six per
cent interest on each of said premiums from date of
payment.   This was refused and one given for defend-
ant in which the jury was directed that if the finding
was for plaintiff, he was only entitled to nominal
damages.

Plaintiff's instruction should have been given and
defendant's refused.   The rule is that, if the insurance
company wrongfully terminates the contract by refus-
ing to receive a premium when it was due, the assured
has a right to treat the policy as at an end and recover
all the money he has paid under it.   *McKee v. Ins.
Co.*, 28 Mo. 383; *Life Ins. Co. v. Garmany*, 74 Ga. 51;
*Life Ins. Co. v. McAden*, 109 Pa. St. 399; *Helme v.
Ins. Co.*, 61 Pa. St. 107; *Braswell v. Ins. Co.*, 75 N. C.
8; *Insurance Co. v. Pottker*, 33 Ohio St. 459; *Ins. Co.
v. Tullidge*, 39 Ohio St. 240; *McCall v. Ins. Co.*, 9 W.
Va. 237; *Fischer v. Ins. Co.*, 69 N. Y. 163; *Life Ins.
Co. v. Paul*, 10 Bradwell, 431; *Meade v. Ins. Co.*, 51
How. Prac. 1.

This rule was first stated in this state by Judge
Scott in the *McKee* case.   But since defendant claims
it to be unsound, we have examined into the matter
further and find that it has had express approval in
the foregoing cases, most of them citing it as authority.
We believe it to be a just rule and one logically result-
ing from other well recognized principles of law.   It is
a fundamental principle of law that where one party,
wholly at fault, refuses to perform his contract with
another, or wrongfully refuses to permit the other to
perform, that other may treat the contract as rescinded
and at an end and recover whatever he has already
paid in performance thereof.   In some instances such
recovery would perhaps be less whatever substantial or
tangible benefit he may have received therefrom.   But
in a case involving a contract of the nature of the one

under consideration, the question of benefit to the party not at fault can not fairly arise. It is an entire contract at his option, for the *continuous* period of his life. For certain valuable considerations, the defendant company assumed the risk of his life to the end thereof. It was a right the insured had to have this risk maintained throughout; the older he became, or the more unhealthful, the greater would be his anxiety, if not to say his right, that the company should continue to recognize the contract. But if the company could, at any time, wrongfully put an end to the contract and yet retain the price of its risk for the time it recognized the contract, there would be an inducement and a premium offered the company to break faith with the assured at the very time it was of most importance to him that it should keep faith.

There are authorities, including the supreme court of the United States (*Lovell v. Life Insurance Company*, 111 U. S. 274), which hold that where the insurance company abandons the contract, the assured can not recover the amount of premiums paid, but only the equitable, or surrender value of the policy at the time of the abandonment, to be ascertained by experts, which, of course, is much less than the premiums paid; indeed such value is partly based on compensation to the company for the risk during the time the contract was acknowledged. A surrender value would necessarily be based on general tables and could have no reference to the particular condition of the insured. Thus, if the insured was on the point of death at the time of the wrongful abandonment by the company, the real value of the policy *in that instance and at that time* would be, substantially, the full amount of the insurance. And yet the general mortality tables might show the expiring policy holder to have many years of expectation of life. The *Lovell* case was by bill in

chancery by the policy holder, where an insolvent company had transferred its assets and reinsured its policy holders in another company; and we are not inclined to adopt the view there taken, in an action which does not present any special reason for applying a rule which, in general cases, would work such evident injustice; an injustice apparent in this case, where the insured, presumably in good health, only seeks to recover the premiums paid, and to which we hold him entitled. But there might readily occur to anyone a case where even such a rule of recovery would be wholly inadequate; as, for instance, where, from disease, the assured was on the eve of death. Certainly the rule would be an unjust one which would prevent the assured from recovering more than an equitable value, based on the general average of mortality tables, and which had as the chief reason in its support that it compensated the company for the risk during the time it chose to recognize the contract—and that, too, in a case where the company, without excuse, abandoned the contract.

But defendant's counsel insist that the case of *McKee v. Insurance Company*, *supra*, has been, in effect, overruled in this state by the case of *Smith v. Life Co.*, 64 Mo. 330. We do not think so. That case omits to mention the *McKee* case, doubtless from the fact that it was not thought to be in point. The question in the *McKee* case was not presented in the *Smith* case. In the latter, the claim of damages, as made by the plaintiff, was for the value of the policy. He contended for nothing more. The opinion in the *Smith* case is founded on that of the United States supreme court in the case of *New York Life Co. v. Statham*, 93 U. S. 24, which arose from the involuntary omission of the assured in failing to pay premiums during the war of 1861–5. Judge BRADLEY, in the latter case, said: "that the failure to pay premiums was legal justification for the

company to extinguish the policy, yet that such failure (to pay premiums) being caused by a public war, without the fault of the assured, they are entitled *ex equo et bono* to recover the equitable value of the policy, with interest from the close of the war." It thus appears that that case was one where the company rightfully abandoned the contract on account of the default of the assured. The *Smith* case was rightly decided, the insured being undoubtedly entitled to sue for the value of the policy, at the time of the abandonment of the policy, if he so elected. That was all he asked in his petition in that case. No suggestion was made as to any other measure of damages, and no thought seems to have been entertained of giving utterance to anything which would militate against the *McKee* case. The *Smith* case by no means decides that he could not have recovered the premiums paid, if he had so elected. The *McKee* case being founded on what appears to be the best of reason and justice, and having been commended and approved in so many of the highest tribunals in the country, we are loath to say anything to its discredit.

It is, however, contended that the question of measure of damages is not now in the case, since the jury found for the defendant. But, at least, the question remains whether the jury have been properly instructed as to matters other than the mere measure of damages. By the third instruction for defendant, a question outside of the issues of the case was submitted to the jury, and under repeated rulings of the supreme court, and this court, we must hold it to have been misleading, and, therefore, reversible error. By that instruction a waiver was defined and the question submitted to the jury, whether they believed from the evidence there had been an agreement between the parties for a waiver "of any of their rights under the

policy sued on;" or, whether there had been "such a course of conduct on the part of the insurance company, or its agents, as was reasonably calculated to throw the plaintiff off his guard and lead him to believe that the company did not intend to rely upon the rights given it by the provisions of the policy." No such issue was made by the pleadings or the evidence. There was no evidence offered as to an agreement to waive any rights, nor as to the defendant's deceiving plaintiff by a course of conduct. The plaintiff made no such suggestion at the trial. On the other hand, the plaintiff admitted, at defendant's instance, at least it appears under the evidence in behalf of defendant, that the requirements of the policy as to its revival in sixty days after the failure to pay a premium, had not been waived. He also admitted that he had not paid the premium which fell due next after the one in dispute and that defendant had not waived its payment.

Again, by instruction number 2, for defendant, there was submitted to the jury the question, whether plaintiff had taken any steps, within sixty days after the alleged failure to pay the premium, to revive the policy, by furnishing a certificate of health and paying proper premiums. No issue of this sort was made at the trial. The record shows that no such pretense or contention was made by plaintiff in the evidence offered. His position was that he had made the proper payment of premium at the proper time and hence had no occasion to revive the policy within sixty days on account of nonpayment. He made no reference to such state of case.

By these instructions the jury may very well have been misled. The case was burdened with matters not in issue, and the tendency was to confuse. The issues only should be clearly set before the jury. When matters which do not belong to the case are submitted to

a jury, a tendency to confusion results, which is unfair to the losing party. A party should not be permitted to submit matters outside of the issues, hypothetically stated, which can be decided only in his favor, since there is no pretense of anything to the contrary. The effect of such practice is to make "straw issues," which can only be resolved in favor of the party tendering them.

There is also complaint made as to defendant's instruction relating to the measure of damages. The court, by that instruction, directed that if the finding was for plaintiff, it could only be for one cent damage. It is true the general rule is that, though there is an error committed against the plaintiff in an instruction as to the measure of damages, it becomes harmless if the verdict should be for the defendant. The cases illustrating this rule will be found to be those where erroneous substantial damages were directed by the court. But in a case where substantial damages should be allowed, it certainly places the party entitled to such damages in an embarrassing attitude to have the jury directed that even if they found for him, it should not be for more than one cent. It might be well said that the tendency of such an instruction is to belittle and disparage and prejudice his case, on the general question of who shall prevail on the main issues. We do not wish to be understood as now stating that such an error alone would be considered reversible error, but we do regard it as, at least, unfortunate for this plaintiff, who is clearly entitled to substantial damages, if the policy was annulled by defendant without cause, that the jury should have been told he was only entitled to one cent. We are, however, firmly convinced that, considering together the errors herein pointed out, the plaintiff has not had a fair trial, and hence we reverse

the judgment and remand the cause, that it may be retried in conformity to the views herein.   All concur.

### ON MOTION FOR REHEARING.

ELLISON, J.—It is a mistake to say that the language of the supreme court in *McKee v. Ins. Co.*, 28 Mo. 383, in regard to the measure of damages, as here contended for, had not been argued and was an *obiter dictum*.   There were two points decided in that case: one, that where the policy having been obtained for the benefit of the wife, it was not terminated by the divorce of the wife.   The other was that the insurance company having wrongfully refused to continue to receive premiums, the wife could treat the policy as at an end and recover back the premiums paid with interest. The question which was not argued and upon which the court expressed no opinion, was as to the second branch of the petition in that case, where damages for breach of contract of insurance in the sum of $1,452 was asked in addition to a judgment for the premiums paid.   This is made apparent by the petition set out in the statement of the case.   The court, in that case, treated the premiums paid as money had and received by the company, and designated the other branch as damages, the petition having made that distinction.   The briefs in the case show that the recovery of the premiums was argued, the plaintiff contending they could be recovered and the defendant that they were forfeited. That the matter of the recovery of the premiums was an especial point of decision, is unquestionable. Whether the recovery of the premiums be called damages, or money had and received, is of no consequence.

The ruling in the case of *Rumbold v. Ins. Co.*, 7 Mo. App. 71, is in no way opposed to the ruling in this case.   The cases are wholly different—are altogether

different actions. The opinion announces that the *McKee* case is not a case in point. Furthermore, it recognizes the *McKee* case as the law in cases of rescission. It is furthermore expressly stated that the facts did not place the company in that case in the attitude of refusing to receive premiums and did not so place the company that it could not justly claim the premiums were earned. The motion is overruled, with the concurrence of the other judges.