In re WESTERN STATES BUILDING–LOAN ASS'N.

No. 16455.

District Court, S. D. California, Central Division.

June 5, 1931.

Gold, Quittner & Kearsley, of Los Angeles, Cal., for petitioning creditors.

Dryer, Castle, McConlogue & Richards, of Los Angeles, Cal., for alleged bankrupt.

Bicksler, Smith, Parke & Catlin, of Los Angeles, Cal., for intervening creditor.

JAMES, District Judge.

An involuntary petition was filed herein, being verified by three alleged creditors. The description of the debt of each creditor is set forth in the following terms, there being a difference in the names and amounts only: "The claim is for moneys deposited with the alleged bankrupt, which moneys the alleged bankrupt agreed to return upon demand (subject to the provisions of the laws of the State of California regarding building and loan associations and the bylaws of the alleged bankrupt applicable thereto.) That an account stated was rendered by the alleged bankrupt and the petitioner in the sum of ———— and said sum was agreed to be due, owing and payable from the alleged bankrupt to the petitioner herein."

The act of bankruptcy alleged is that, within four months preceding the date of filing the involuntary petition, respondent being then insolvent, an equity receiver was appointed and put in charge of its property. A motion is made on behalf of the alleged bankrupt and an intervening creditor to dismiss the petition on the ground chiefly that petitioners are not shown to be creditors holding provable claims. The argument in support of the motion to dismiss is mainly to the point that the contract relationship of the alleged creditors with the alleged bankrupt is that of certificate holders or shareholders, as to whom the right to have payment made is contingent and not certain—hence that the claims of such creditors are not presently provable. Section 59b of the Federal Bankruptcy Act, 11 USCA § 95 (b) describes parties who are permitted to file an involuntary petition as follows: "Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to $500 or over. * * * *"

The law of the state of California which authorizes the formation of building and loan associations requires that the articles of incorporation shall state that the as-

sociation is formed to encourage "industry, frugality, homebuilding, and savings among its shareholders and members; the accumulation of savings; the loaning to its shareholders and members of the moneys and funds so accumulated, with the profits and earnings thereon, and the repayment to each of his savings and profits, whenever they have accumulated to the full par value of the shares, or at any time when he shall desire the same or when the corporation shall desire to repay the same, as it may be provided in the by-laws. * * *" Civ. Code Cal. § 633.

It is provided by the California law that building and loan associations shall have what is known as "guarantee stock," which becomes permanent capital, and is required to remain as such, and is subject to the liabilities attached to paid-in capital stock of other classes of commercial corporations. It is provided that the guaranty stock "shall protect and guarantee all other stockholders and creditors against any loss. * * *" (Civ. Code Cal. § 634 (d). With the capital stock as a supporting basis, building and loan associations invite public patronage in investments, and, while these patrons might conventionally be called depositors, their deposits are applied in the purchase of other classes of shares listed as "installment shares," "full paid shares," "pass book shares." The depositor or shareholder receives interest on his investment or deposit.

It is to be noted that the contract relationship established does make the association the debtor of its shareholder, for the latter is entitled to receive back his money, and cannot be compelled to remain a shareholder against his will. It is provided in the law (section 642, Civ. Code Cal.) that, if the stockholder-investor shall decide to withdraw his investment, he may be required to give thirty days' notice of his intention so to do. In the section cited it is then provided: "On the expiration of such notice, he is entitled to receive the full amount paid in upon the stock or investment certificate surrendered, exclusive of the entrance fee, together with such proportion of the earnings thereon as the by-laws may provide, or as may be fixed by the board of directors; but not more than one-half of the monthly receipts in any one month must be applied to withdrawals for that month, without the consent of the board of directors. * * * Whenever the demands of withdrawing stockholders or investors exceed the money applicable to their payment, the notices of intention to withdraw must be registered in the order of filing and payments thereon must be made in succession, in the order that such notices were filed and registered."

It is asserted by the respondent and the intervening creditor that, as the withdrawing investor or depositor is limited as above provided in respect to the fund from which he shall be paid, his claim is contingent, and hence not provable in bankruptcy.

The claim of a depositor or investor is not contingent as to amount, at least so far as the principal sum is concerned; the association remains his debtor, regardless of the time when he may be paid. Where such an association is active and pursuing its normal course of business, the depositor must be bound by the contract which he has made, affected by the provisions of the law applicable thereto. When an association is forced into liquidation, and as a consequence is in a position no longer to fulfill its obligations, it must be that the debt matures, and that, in whatever fund is realized upon a sale of the assets, the debtor or shareholder is entitled to participate. The question of the order of payment, or the classification that his claim may be given, is immaterial. The creditor should be entitled to prove his claim where such a contingency arises. As is said in Central Trust Company v. Chicago Auditorium, 240 U. S. 581, at page 591, 36 S. Ct. 412, 415, 60 L. Ed. 811, L. R. A. 1917B, 580: "It must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performances; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement."

Again, on page 589 of the same decision (36 S. Ct. 412, 414): "It is no longer open to question in this court that, as a rule, where a party bound by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach. * * * It was * * * held in Lovell v. St. Louis Life Ins. Co., 111 U. S. 264, 274, 4 S. Ct. 390, 28 L. Ed. 423, 426, where a life insurance company became insolvent and transferred its assets to another company, that a policy holder was entitled to regard his contract as terminated

and demand whatever damages he had sustained thereby."

See, also, Collier on Bankruptcy (13th Ed.) volume 2, p. 1409, on Anticipatory Breach; Williams v. U. S. Fidelity & Guaranty Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713; Maynard v. Elliott, Trustee, and companion cases, 51 S. Ct. 390, 75 L. Ed. ——, decided by the Supreme Court of the United States on April 13, 1931.

The involuntary petition alleges that, prior to the filing thereof, a receiver in the equity case had been appointed, and that the respondent association was at the time insolvent. In such circumstances, the association ceased to be a going concern, and its inability to perform its contracts became established. Central Trust Company v. Chicago Auditorium, supra. The question of its insolvency at the time of the appointment of the receiver is an issue tendered by the petition, and the association is entitled to resist it, if the facts so warrant.

My conclusion is that the petitioners do show that they have provable claims, and as creditors have the right to prosecute their petition. Wilson et al. v. Continental Building & Loan Association, 232 F. 824 (C. C. A. 9th). As I read that decision, it is in point. In my opinion, the petition in other respects is sufficient.

It is perhaps an unfortunate condition of the Bankruptcy Law which permits creditors, with a few small claims, to interfere with and thwart reorganization plans approved by the majority interest, and which are sought to be carried through under an equity receivership. An amendment to the Bankruptcy Act, which would empower the court to suspend proceedings for a reasonable or limited time under any bankruptcy petition filed, to allow a reorganization to be effected, would no doubt be beneficial legislation. Possibly, in view of recent official surveys made of bankruptcy practice, changes in the law, for which there seems need, will result.

Meanwhile, the bankruptcy court, influenced by the consideration that peremptory liquidation of the assets of the association may result in loss in dividends to creditors, should lend all possible assistance, and through every means that the law will permit, to prevent the sacrifice of property.

The motion to dismiss the involuntary petition must be denied, and it is so ordered. An exception is noted in favor of the respondent and intervening creditor.