**HARRY E. JONES, Inc., v. KEMP et al.**

**INVESTORS OF AMERICA, Limited, v. SAME.**

**INVESTORS OF AMERICA, Limited, et al. v. SAME.**

**No. 6934.**

Circuit Court of Appeals, Ninth Circuit.
Jan. 7, 1935.

624

George T. Warren, of Los Angeles, Cal., for appellants.

H. W. O'Melveny, Walter K. Tuller, and Louis W. Myers, all of Los Angeles, Cal. (O'Melveny, Tuller & Myers, of Los Angeles, Cal., of counsel), for appellee Kemp.

Before WILBUR, Circuit Judge,· and NORCROSS, District Judge.·

## NORCROSS, District Judge.

Appellants filed claims against the respondent Guaranty Building & Loan Association of Los Angeles, claiming preferred rights in respect thereto. The said claims, subject to a slight exception hereinafter noted, were approved by the receiver and special master as general claims, but denied priority or preference in payment out of the funds of the receivership estate. From an order confirming the report, findings, and conclusions of the special master, said claimants appeal.

The salient facts respecting the claim of Investors of America, Limited,· as stipulated by counsel for the respective parties, are the following: That on June 28, 1930, said claimant issued to respondent association two checks in the sum of $25,000 each, one of which was cashed August 1, and the other August 22, 1930. That on September 24, 1930, a check for the sum of $19,000 was similarly issued, and on September 26, 1930, was cashed. That on September 25, 1930, the said association received $6,000 by withdrawing said amount from claimant's account in said association, and on October 27, 1930, said association in the same manner received $25,000. That the said sums of money and each of them were paid by said claimant and received by said association as the consideration for the purchase on June 28, 1930, by claimant from said association of guaranteed capital stock of said association thereafter to be issued, which stock was not authorized to be issued by the building and loan commissioner of the state of California, nor was said stock ever issued by said association to said claimant. That, other than the promise of said association to deliver said guaranteed capital stock, claimant received no other thing of value or consideration whatsoever for said sum of $100,000.

A further claim of appellant Investors of America, Limited, was for the sum of $5,598, money which said association received from collections which the said association undertook and agreed to collect for said claimant, and, when delivery of checks was made by said association in settlement of the amounts so collected, there was no money in the bank on which said checks were drawn sufficient to cover said checks or any of them.

The salient features respecting the claim of appellant Harry E. Jones, Inc., No. 14119, as stipulated by counsel for the respective parties, are the following: That the said association was the collecting agent for claimant with the duty upon it to remit its collections to said claimant. That on December 11, 1930, said association as such agent collected for claimant the sum of $3,321.46, of which sum the amount of $2,940.74 was collected from persons owing claimant by means of checks upon various banks payable to said association, and were deposited by it in its general bank account in the Citizens' National Trust & Savings Bank, Hollywood & McCadden Branch, along with the general funds of said association, and of which said total sum the amount of $280.72 was collected from persons owing claimant in cash and/or currency, and was placed by said association in its teller's cash with other cash or currency belonging to said association. That at the close of business on December 11, 1930, and at all times thereafter to and including January 19,

1931, the said general bank account was overdrawn. That the lowest cash balance in the teller's cash of said association between the dates of November 10, 1930 and December 11, 1930, was the sum of $2,990.15, which said sum came into the possession of the receiver of said association.

Appellant's above-mentioned claim was allowed as a preferred claim to the extent of said sum of $280.72. No question in respect to such preferred allowance is presented upon this appeal.

The salient facts respecting the claim of Harry E. Jones, Inc., No. 14120, as stipulated, are the following: That November —, 1930, one Wroughton made an application to said association for a loan of $10,000, which was approved and a certain loan escrow was opened in said association. Thereafter on November 15, 1930, Moro Strand Company, a corporation, delivered into said escrow a deed in favor of said Wroughton and his wife to property described in said application for loan; said delivery being accompanied by a letter authorizing delivery of deed to said Wroughton when said association could obtain for said Moro Strand Company the sum of $6,807.07. That said association did not segregate any particular part of its assets to be applied on the said loan of $10,000, but on November 28, 1930, issued its check payable to Harry E. Jones, Inc., in the amount of $6,807.07, drawn on the Citizens' National Trust & Savings Bank, Hollywood & McCadden Branch, which said check was assigned by payee to said Moro Strand Company and by said company reassigned to said payee, and that said check was never presented to said bank for payment due to the fact that said association closed its doors December 11, 1930. Said association received from said Wroughton and wife as security for said loan of $10,000 a note and trust deed covering the property described in the said deed by Moro Strand Company. Subsequently, on December 3, 1930, said association purported to transfer all of its right, title, and interest in and to said note and trust deed to the United States Building & Loan Association of Fresno, a corporation, and, as consideration for said sale, made a debit entry against the account of said association of Fresno on its passbook account with the said association of Los Angeles in the amount of $9,959.66.

Appellants and appellees are in substantial accord respecting what is the main question of law presented for decision upon these appeals. As said in appellants' brief:

"The main question for decision upon this appeal may be stated:

"Are general or outside creditors entitled to be paid their claims prior to the payment of any claims based upon investment certificates of any class?"

As stated in appellees' brief, "the ultimate question of law to be determined" is:

"Are the holders of investment certificates of an insolvent California Building and Loan Association to be regarded, for the purpose of distribution after liquidation of assets, as members or shareholders of the Association or as creditors thereof?"

In the case of Barrymore v. Kemp, 69 F.(2d) 335, 339, this court had under consideration the question whether appellants therein, holders of investment certificates, were, by reason of an alleged contract evidenced by a certain letter signed by the vice president and secretary, and having the seal of the association thereon, entitled to be classed as general creditors ab initio and entitled to priority over investment certificate holders of all classes, in the distribution of the assets of the association. In determining the question thus presented, this court held:

"The finding that appellants are investment certificate holders or depositors of the respondent association is supported by the evidence. As such they are creditors of the association and entitled to share pro rata only with other general creditors on a distribution of the assets of the association."

In that opinion reference was also made to certain distinctions in the status of shareholders and holders of investment certificates, as follows:

"The by-laws made material distinctions between the rights and obligations of the holders of membership shares or certificates and the holders of investment certificates. Holders of membership shares or certificates are required to sign the by-laws and are members of the association with the obligations and rights of members of a corporation, and, at any time, upon 60 days' notice, might withdraw their investments and accrued and unpaid limited dividends (also termed 'interest') upon the conditions named. On the other hand, holders of investment certificates are declared not to be members; have none of the rights, powers, or liabilities incident to membership

or the holding of stock in a corporation; have no right to participate in the affairs of the association by way of voting or otherwise, and the only profit they should derive is interest (also termed 'dividends') on their investment certificates, and may, after one year and upon 30 days' notice require repayment of the amounts represented by their investment certificates and accrued and unpaid interest, under the conditions named."

Both in this case and in the Barrymore Case, supra, contention has been made that holders of investment certificates should not be classed as general creditors, but as shareholders. While the question was considered and determined in the Barrymore Case that such holders of investment certificates should be classed as general creditors, without reviewing in extenso the arguments presented in the briefs, attention is directed to the statutes of the state of California making such investment certificates "legal investments for the funds of executors, administrators, guardians, receivers, and trustees of every kind and nature, and for the funds of all insurance companies." Stats. 1927, p. 251, § 1. A later statute made such investment certificates also legal investments for the trust funds of cemetery associations. Stats. 1931, p. 2434. It is inconceivable that the state Legislature would have made such investment certificates "legal investments" for the purposes stated in the statutes unless it was well understood that such investment certificates were at least general obligations of such associations.

Holders of investment certificates for the purpose of distribution are to be regarded as creditors of the Guaranty Building & Loan Association of Los Angeles for the purpose of distribution of its assets, and other general or outside creditors are not entitled to be paid their claims prior to payment of claims based upon such investment certificates, but all such creditors are to be paid in relative proportion. In addition to authorities cited in the Barrymore Case, supra, we cite Oulton v. Savings & Loan Soc., 17 Wall. (84 U. S.) 109, 21 L. Ed. 618; Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580; Lovell v. St. Louis Life Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 423; Pacific Coast Savings Soc. v. Sturdevant, 165 Cal. 687, 133 P. 485, 49 L. R. A. (N. S.) 1142; In re Western States Building-Loan Association (D. C.) 50 F.(2d) 632, 633;

In re Guaranty Building & Loan Association (D. C.) 49 F.(2d) 776, 777.

Appellants make the further contention that the receiver is estopped to show the moneys received from appellants are not on hand. In support of this contention, we quote the following from appellants' brief:

"The findings of the Special Master that the respondent association had to its credit in the Bank of Hollywood, which failed on December 11, 1930, $161,594.24, and that the receiver had received from the liquidation a fifteen (15%) per cent dividend thereon. There is no showing but that the receiver will eventually receive the full amount of the above balance. In addition to the above, there is on deposit in the various banks to the credit of the respondent association a total of $20,692.03, as shown by the addition of the items listed. The total amount of trust funds found by the Special Master to have been traced and allowed by him was the sum of $23,363.49. Therefore, it will be conclusively presumed that the monies remaining were trust funds to the extent of the claims of the claimants in the sum of approximately $115,000.00, and that the trust funds were neither paid out nor invested in their property, but were kept sacred."

In appellees' brief it is asserted:

"There is no question of estoppel in the case. * * * The only question on this appeal is whether as holders of these claims they are entitled to priority of payment over other holders of general claims arising out of and based upon investment certificates. * * *"

Appellants' assignments of error, however, include the following:

"The Court erred in not finding and ruling that claimant Investors of America, Ltd., have a preferred claim against said receivership estate in the amount of $105,598.00, and that claimant Harry E. Jones, Inc., have a preferred claim against said receivership estate in the amount of $3,321.46 on its claim, Special Master's No. 72—Receiver's No. 11419; and $6,807.07 on its claim, Special Master's No. 11420."

Contention was made before the special master that appellants' several claims represented trust funds and should be allowed as preferred claims and paid before claims of general creditors.

█ The attention of the court has not been directed to any authority sustaining the

view that any portion of the $100,000 paid by appellant Investors of America, Limited, to the said association for the purchase of guaranteed capital stock should have been regarded as a trust fund and thus given a preference over general creditors. Appellants' rights in the premises as against the said association were enforceable in an action at law for money had and received. Rose v. Foord, 96 Cal. 152, 30 P. 1114; Lemle v. Barry, 181 Cal. 1, 183 P. 150; Bridges v. Fisk, 53 Cal. App. 117, 200 P. 71; Nash v. Towne, 5 Wall. 689, 18 L. Ed. 527.

 That portion of the claim of appellant Investors of America, Limited, for the sum of $5,598, moneys received by said association from collections, and the claim of appellant Harry E. Jones, Inc., for the sum of $3,321.46, which also was for collections, present a different question. These several amounts were found by the special master to have been trust funds. Preference was denied, however, excepting in respect to the sum of $280.72 of the latter claim, for the reason such trust funds were deposited by the said association in one of the several bank accounts, and commingled with the funds of the association, and thereafter all funds disbursed by the association from the account in said bank.

A number of authorities were cited by the special master supporting this conclusion, among which are the following: Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Spokane County v. First National Bank (C. C. A.) 68 F. 979; American Can Co. v. Williams (C. C. A.) 178 F. 420; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; St. Louis Ry. v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060; Lathrop v. Bampton, 31 Cal. 17, 89 Am. Dec. 141.

The contention upon the part of appellants in effect is that, notwithstanding the fact the bank accounts in which appellants' trust funds were deposited were dissipated by the association, the moneys on deposit in other banks were liable for the payment of claims for such trust funds in advance of claims of general creditors. It is not claimed that such trust funds have been traced into any other bank accounts or other funds of the association. No authorities are cited in appellants' brief in support of such contention. The contention that the receiver "stands in the same position that the Guaranty Building and Loan Associa-

tion does," and therefore "is estopped to show the moneys received from Investors of America and H. E. Jones, Inc., is not on hand," is without merit. It is an admitted fact that the association was insolvent when its assets were taken over by the receiver. Under such circumstances the receiver is not only bound to consider rights of claimants as between such claimants and the insolvent corporation, but the respective rights of creditors as between themselves.

The only authority we have been able to find dealing with the specific question here presented is the case of State Bank of Winfield v. Alva Security Bank, 232 F. 847, 849, decision by the Circuit Court of Appeals of the Eighth Circuit. From the opinion in that case we quote:

"The capital defect, however, of plaintiffs' theory is their treatment of the grand division of the bank's assets in its reports known as 'Cash and Sight Exchange' as a 'fund' within the law relating to the following of trust funds. To adopt that theory is to re-establish under a mere book-keeping disguise the exploded notion that a trust fund may be recovered if it can be traced into the general assets of an insolvent estate. The courts have shown a tendency to restrict the 'trust fund' doctrine. Empire State Surety Co. v. Carroll County, 194 F. 593, 114 C. C. A. 435; Board of Commissioners v. Strawn, 157 F. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; In re Brown [C. C. A.] 193 F. 24; Commercial National Bank v. Armstrong (C. C.) 39 F. 684. The rule is accurately stated and numerous authorities cited by this court in the first case referred to, as follows:

" 'It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver.'

"If a trust fund can be traced into a single account, like cash, or a credit at a single bank, then the trust may be impressed upon the smallest balance that remains in the fund between the time of the deposit and the date when a return of the trust fund is demanded. But the rule does not admit the grouping of numerous accounts together as a single fund. Brennan v. Tillinghast, 201 F. 609, 120 C. C. A. 37."

What has heretofore been stated will apply also to the claim of appellant Harry E. Jones, Inc., No. 14120.

Decree affirmed.