Thomas Gallagher v. George E. Brennan et al., Receivers of the International Building, Loan and Investment Union.

' 99    81|
e100  ¹157|
' 99    81|
r199s 207|

1. INSOLVENT BUILDING AND LOAN ASSOCIATION—*Status of Stockholders and Creditors.*—When a holder of matured shares of stock in a building and loan association, surrenders his stock, procures the cancellation of his certificate, and allows the amount due him upon his shares to remain with the association, taking therefor an acknowledgment of the indebtedness, he becomes a creditor of the association upon the same basis as outside persons, and is entitled to be preferred as to such claim above stockholders whose stock had not matured at the time the association was declared insolvent.

2. EQUITY JURISDICTION—*In Winding up the Affairs of Building and Loan Associations.*—Equity will always disregard the form and look to the substance of a transaction in order to prevent injustice.

Bill to Wind up the Affairs of a Building and Loan Association. —Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded with directions. Opinion filed December 12, 1901.

Statement by the Court.—On April 29, 1898, a decree was entered in the Superior Court in a proceeding by the state auditor against the International Building, Loan & Investment Union, by which the union was found to be insolvent September 4, 1897, was dissolved, its charter annulled, its business ordered to be wound up and its assets administered upon, converted, collected, martialed and distributed. Receivers were appointed, and by the decree of the court, invested with the title to the union's property.

Previously another suit, by one Emerich against the same union, was consolidated with the said People's cause, and the receivers in the former cause were ordered to turn over the property, etc., of the union then in their hands to the receivers in the People's cause. It was also ordered that claims filed with the receivers in the Emerich case be turned over to the receivers in the People's case, and have the same effect as if filed with the latter receivers.

February 6, 1900, the receivers in the consolidated cause filed their petition, showing, in substance, that certain

claims had been filed with them by stockholders of the union, showing amounts claimed by them and amounts as shown by the union books, including among others a claim of Thomas Gallagher of $4,389; also certain claims by creditors other than stockholders. The petition prays that the claimants be required to appear and prove their claims.

Among other claims that of said Gallagher was heard by the chancellor, the evidence being taken in open court and a decree rendered finding that Gallagher had paid to said union upon account of shares of stock owned by him, the sum of $3,809 and his claim, among others, was allowed for that amount. The decree also allowed certain other claims as preferred claims against the property and assets of the union. From this decree the appeal herein is taken by said Gallagher.

The claim of Gallagher as filed and sworn to by him, is stated to be for cash deposited with said union on December 1, 1894, and payable on demand, as evidenced by a certain deposit book issued by the union to Gallagher, and is for the sum of $3,800, with interest from July 1, 1895.

It appears from the evidence that Gallagher was a stockholder in the union October 1, 1888, and there was issued to him at that time fifty shares of stock of the par value of $5,000, on which the union agreed to pay $100 in six years on each share to him, upon his compliance with certain terms and conditions. One condition of this agreement makes the by-laws of the union a part of the contract. Section 2 of Article 13 of the by-laws is as follows :

" Any shareholder may pay his installments, interests and premiums in advance, or deposit with the union a certain sum to be used for such payments as they may fall due, and the union will receipt for the same and notify when said sum is exhausted."

About December 12, 1894, after the stock had matured, Gallagher surrendered his certificate of stock to the union and at the same time received part of the money due him thereon, and gave to it the following receipt :

" Received $5,000 December 12, 1894, of the International Building, Loan and Investment Union, the full

Gallagher v. Brennan.

amount due on the within certificate of shares, and they are hereby surrendered and ordered canceled."

Gallagher was then given by the union, a pass or deposit book, in which appear the following entries:

"Account International Building, Loan and Investment Union.

| Dr. | In acc't with | Thos. Gallagher. | Cr. |
|---|---|---|---|
| 1894. | | 1895. | |
| Dec. 1st, Dept. 6 per cent 3,800. | | July 15, Cash Int. 133. | |
| 1895. | | | |
| July 1, int. to date 133." | | | |

Gallagher presented this book at the office of the union, as he says, one year later, and received $133.33 interest. Presumably this is the interest which appears to have been entered on the pass-book under date of July 15, 1895. All Gallagher's transactions with the union were had with a Mr. MacCoun, who acted as bookkeeper and cashier of the union, who told Gallagher at the time the stock matured that if he, Gallagher, did not want to use the rest of the money, to leave it with the union and it would be paid to him on four or five days' notice; and while it remained with the union he, Gallagher, would receive interest at the rate of six per cent per annum. The money was not paid to Gallagher, and was left by him, he at the same time taking the pass-book and giving the receipt as above stated.

On December 1, 1894, Gallagher was also the owner of twenty other shares of stock in the union, on which he received his money some time during the year 1895.

About the 14th or 15th day of July, 1896, Gallagher made demand of the union for the balance of the money due him from the union on account of the fifty shares of stock, which was surrendered by him in December, 1895, to the union. Gallagher made no agreement at the time of the surrender of said stock, that any part of the balance of the money due him thereon from the union should be used by it to pay his installments upon his other twenty shares of stock, and none of it was used for that purpose.

On said pass or deposit book appears the following:

"Deposits received of $1 and upward from members only," and on the inside cover of the same book appears the following :

" Members may deposit money, subject to withdrawal on demand.   Money so deposited bears interest at six per cent per annum on six months deposit.   *   *   *   Any shareholder desiring to avoid being fined can deposit any amount from one dollar upward with the union.   When there is in the hands of the secretary an amount equal to the monthly dues on the stock in the name of the shareholder, there will be no fines charged against the stock.   By keeping up your monthly payments and adding to this account, you will always have available funds in the time of need. *   *   *   No agent is authorized to receipt special deposits."

The books of the union show entries in the account of Thomas Gallagher made at the time of his surrender of his stock as follows :

December 12, 1894, matured stock, certificate No. —, 1,896 shares, ledger page 394, $4,750.  That is the debit.  Credits: Thomas Gallagher deposited on December 12, 1894, $3,800; page 926, $3,800.  Bills receivable: Thomas Gallagher, folio 155, $300; interest, $36, $3.75, folio 132.

It appears that on December 12, 1894, Gallagher was paid by the union in cash $610.25, which, together with the other deductions shown by the account, left due to him the sum of $3,800, which is the amount that was entered in the pass-book then given to him.   The money paid to Gallagher by the union and the settlement with him as to his matured stock, the surrender of the stock and the giving to him of the pass-book, were paid and arranged pursuant to the directions and by authority of the secretary of the union.

It also appears that no resolution of the board of directors of the union authorizing the receipt of deposits of money by the union, aside from the printed by-laws above set out, was ever brought to the knowledge of Mr. Mac-Coun, with whom Gallagher had the transactions in question.   MacCoun also testified that he was not authorized by the secretary of the union to take deposits from any one except a stockholder, and that it was not his custom to do so.

SULLIVAN & McARDLE, attorneys for appellant.

PAM, CALHOUN & GLENNON, attorneys for appellees.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

We find it unnecessary, in view of the conclusion we have reached, to consider the first two points in appellant's argument, viz., that the court admitted incompetent evidence and that the incompetent evidence so admitted had no probative value, since, even if the evidence was competent, it would not change the result reached by us.

The finding in the decree that the appellant paid to the union, on account of shares of stock owned by him in said union, is not strictly accurate. As appears from the foregoing statement of facts, appellant made payments to the union from time to time, upon fifty shares of stock purchased by him from it; that on or about December 12, 1894, said fifty shares of stock having matured, he presented it for payment, when there was an adjustment between him and the union of the amount due him thereon; he surrendered the certificate of stock to the union, and it was then canceled, he being paid on account by check of the union $610.25, but no more, and being charged upon the books of the union with certain items shown thereon, which left a balance due him of $3,800 on that date, on which it appears that he was paid interest at the rate of six per cent per annum up to July 1, 1895. Appellee's counsel in their argument, assert that the stock was surrendered and canceled December 12, 1894.

Gallagher was induced by the secretary of the union to leave this amount, which was due him on account of his stock, with the union, and he was then given what is termed a pass or deposit book, which shows the union in account with Gallagher under that date on the debit side a deposit of $3,800, and a payment of interest July 1, 1895, of $133, and a credit of a like amount for interest.

It does not appear that after this transaction appellant, as to these fifty shares of stock, enjoyed any rights or

privileges of a stockholder in the union, and we are of
opinion that by the surrender to the union and cancellation
of the certificate of these shares, and payment of interest
thereafter to appellant upon the indebtedness of the union
then acknowledged, he thereby severed his relations with
the union as a stockholder and became and was, from the
12th day of December, 1894, a creditor of the union, upon
the same basis of any outside creditor, and is entitled to be
preferred as to this claim above stockholders whose stock
had not matured at the time the union was declared
insolvent, which was long after December 12, 1894, and
after the payment of interest.

It is clear from the evidence that at the time of the
adjustment between the union and appellant, no money
passed to appellant except the amount which was paid him
on account. The form that the transaction took, viz., giv-
ing a receipt for the amount due him on the stock and tak-
ing a pass-book showing a deposit of the amount due him
on the settlement, does not change the facts of the trans-
action. Equity will always disregard the form and look to
the substance of a transaction in order to prevent an
injustice.

Appellant is not in the position of having, as an original
transaction, deposited money with the union as his banker,
but he merely left with it the balance due him upon his
stock, the certificate of which was then surrendered and
canceled. His position as to the union is clearly different
from that of " Kriete and his class " in the very recent case
of Columbus, etc., Ass'n v. Kriete, 192 Ill. 128, relied upon
by appellees' counsel. Kriete and his class simply deposited
their money with the secretary of the association—did not
buy stock and did not become stockholders. He also dif-
fers from " Truka and his class," in the Kriete case, in that
he surrendered his stock to the union and the certificate
was canceled, thereby, from that time, severing his relation
as stockholder to the union; whereas Truka and his class
were holders of matured stock which had not been sur-
rendered to the association nor canceled.

Gallagher v. Brennan.

The very able argument of appellees' counsel that it would be inequitable and not in accord with the weight of authority to allow appellant a preference, fails to convince us of the correctness of their position. The most, if not all, of the cases on which reliance is placed, are not, as we believe, analogous in their facts. They all seem to be based on the theory that there should be no preference between stockholders, whether they hold paid up, matured or unmatured stock in an insolvent association, which became insolvent either before the stock was paid up or matured, or before they received what was due them, the relation of stockholder to the association at no time having ceased. This case is entirely different. The stock here had been surrendered and canceled. Appellant no longer had any voice as to this stock in the management of the association, and the relation of creditor of the association had been effectually established for nearly three years before it became insolvent, and one installment of interest on the debt had been paid to him.

The position of appellant is also different from that of the appellant in Stefan v. Brennan, 92 Ill. App. 291, who was either simply a depositor, as was Kriete and his class, or a stockholder. The court held that he was a stockholder because he was in fact, and the evidence tended to show his money was deposited with the association as advance payments on the stock owned by him in the event of its being needed for that purpose, and for that reason this court held that he had no good ground of complaint. The evidence in this case does not, in our opinion, show that appellant left his money with the union by way of advance payments on stock in case it should so be needed.

The decree of the Superior Court is reversed and the cause remanded, and that court is directed to enter a decree in appellant's favor for $3,800, with interest from July 1, 1895, at five per cent per annum, and that he be preferred over the claims of stockholders for money paid on shares scheduled in the decree appealed from. Reversed and remanded, with directions.