## Mutual Union L. and B. Association v. Jacob Stolz.

1. BUILDING ASSOCIATIONS—*Paid-up Stock—Priority.*—Holders of so-called paid-up stock are not entitled to a priority over ordinary shareholders in the distribution of the assets of an insolvent building and loan association.

2. SAME—*When Holders of Paid-up Stock are to be Treated as Shareholders and Not as Creditors of the Association.*—Persons who invest in the so-called paid-up stock of a building and loan association, and vote, at meetings of the stockholders of such association at which it is decided that the association should go into liquidation, for a board of directors to serve during the period of liquidation, and afterward give notice of withdrawal of such stock, are to be considered as stockholders and not creditors of the association.

Assumpsit, on shares in a building and loan association. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed. Opinion filed January 29, 1901.

GABRIEL J. NORDEN, attorney for appellant.

F. W. RAYMOND and P. B. COOLEDGE, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This suit in assumpsit was brought by appellee to recover from appellant the amount claimed to be due upon two certain certificates for the face value, in the aggregate, of $2,100. The two certificates are exactly alike except in amount and date—one of them being dated July 20, 1892, and the other July 27, 1892. A copy of one of them is as follows:

" Shares, $100 each.

Folio 41.                    Class E.                    Series 2.

Mutual Union Loan and Building Association, Chicago.

No. 43.    Authorized Capital, $10,000.    11 shares.

This is to certify that Jacob Stolz is entitled to eleven shares of the capital stock of the Mutual Union Loan and Building Association, transferable only on the books of the

association, by himself or his attorney, upon the. surrender of this certificate, but not transferable while the shareholder aforesaid is indebted to said association, either as principal debtor or otherwise, unless by the consent of the board of directors.

This certificate of stock is fully paid up, and entitles the person in whose name it stands on the books of the Mutual Union Loan and Building Association to the sum of one hundred dollars for each share, and it is payable at any time on thirty days' notice, and the holder of the same is also entitled to the interest thereon at the rate of six per cent per annum, payable semi-annually, on the first day of April and October of each year.

Provided, however, that the association may redeem the same at any time on twenty days' notice to the subscriber, and no interest shall accrue thereon after such notice.

In testimony whereof the said association has caused this certificate to be signed by its president and secretary, and the corporate seal of said association affixed thereto at Chicago, Illinois, this 27th day of July, 1892.

(Corporate Seal.)      Michael Schmitz,

President.

John Folz, Secretary."

The real question in the case is as to whether the appellee is a shareholder or a creditor. If he is a shareholder, it is conceded that he can not recover; on the other hand, if he is a creditor, he recovered rightfully, and the judgment should stand.

There is no dispute about the facts; they are established by the stipulations of the parties, or by evidence that is not controverted.

It appears that at the time of the issuance of the certificates, in July, 1892, the appellant association was solvent, but since then, and about October, 1897, it went into voluntary liquidation under the statute concerning such corporations; that, previous to the issuance in July, 1892, of the writings in question, the appellee. his wife and child, had been stockholders; that their stock matured when these writings were issued, and that in place of paying cash for the matured stock which it is agreed could then have been had by them, an arrangement was made whereby the money was left with said association, and said instruments issued

therefor.   All interest due until April 9, 1897, is stipulated to have been paid, and also certain payments, aggregating $1,218, have been made to appellee since said association went into liquidation.

It further appears that the appellee was permitted to, and did vote at stockholders' meetings as a shareholder, and that he gave a notice for withdrawal of his twenty-one shares of stock, April 9, 1897.

In connection with certain of the by-laws of the association hereinafter specifically referred to, such are the facts deemed material as disclosed by the evidence and stipulations, and upon which appellee bases his action.

There are circumstances surrounding the transaction that make it a question of much delicacy to determine whether these are certificates of indebtedness, under which appellee can support his claim to be a creditor, or are certificates of stock under which he must be confined to his rights as a shareholder.   He is one or the other.

Irrespective of the question, not before us, of the right of appellant to issue certificates of indebtedness for borrowed money, or of the validity of paid-up stock like that authorized as class E, it seems to us that the by-laws of appellant throw much light on the question.   Said by-laws contain, among others, the following provisions regarding paid-up stock, called in said by-laws, class " E " stock :

" Article II.   Section 1.   The capital stock of this association shall be ten million dollars, divided into shares of one hundred dollars each, divided into three classes, named ' A,' ' B' and ' E,' and apportioned in the following amounts :

Class ' A,' forty thousand shares of one hundred dollars each.

Class ' B,' forty thousand shares of one hundred dollars each.

Class ' E,' ten thousand shares of one hundred dollars each.

Section 2.   Stock in classes ' A ' and ' B ' shall be known as installment and loan stock, and class ' E ' as paid-up stock.

Section 5.   The shares of stock in class ' E ' shall be issued quarterly on the first Tuesday of the months of Jan-

uary, April, July and October of each year, on request of stockholders having paid up their shares in installments."

" Article II.  Section 3.  Shares on which installments have been paid to the sum of one hundred dollars, or a multiple thereof, may be converted into stock in the class ' E,' or paid-up stock at any time."

" Article XIV.  Section 4.  All stockholders in class ' E ' shall be entitled to a semi-annual dividend not to exceed six per cent per annum in cash, on the first Tuesday of April and October of each year.

Provided, however, that the board of directors shall have power to determine the rate of interest to be paid on said stock; but in no case shall it exceed six per cent per annum. In the event of a change of interest ordered by the board of directors on said stock, the secretary shall give notice by mail to all stockholders in said class ' E.' "

"Article XVIII.  Section 2.  All stock in class ' E ' may be redeemed by the association at any time in the order of its issue on twenty days' notice to the subscriber; said notice shall be by mail to the last given address of the subscriber as it shall appear on the books of the association, and no interest shall be paid on any stock in class ' E ' after the expiration of twenty days from the date of notice as aforesaid."

"Article XV.  Section 3.  All members in classes 'A ' and ' B ' desiring to withdraw from the association and surrender their stock for cancellation as provided by section 6 of the act under which this association is organized, shall be entitled to receive the amount of installments paid in by them (less all fines, interest and other charges).

Section 4.  All members having paid-up stock shall be governed by the same section above mentioned."

It is plain, if not admitted, that the certificates were issued to appellee under the by-laws so quoted, and were intended to be given and accepted in compliance with such provisions.

There was just as plain a provision for the issuance of paid-up or class " E " stock, as for either class " A " or class " B."

At the time the certificates were issued appellee had the right to have his cash or the certificates.  He chose the latter, and we do not see whereby he did not then become a class " E," or paid-up stockholder.  As if to confirm the

fact that he was a stockholder, he voted as such on his twenty-one shares, at the stockholders' meeting held in 1897, when it was decided that the company should go into liquidation, and for a board of directors to serve during the period of liquidation.

He had also, on April 9, 1897, given his written notification to the appellant that he desired to withdraw his twenty-one shares of stock. He also received payments aggregating $1,218 as dividends during the period of liquidation.

Opposed to these considerations tending to show that appellee is a stockholder, his counsel recapitulate their reasons why he should not be considered as a stockholder and should be regarded as a creditor, because, as counsel say, the certificates "make a provision for the repayment of the principal sum. They provide for the payment of a fixed and definite rate of interest, and not for a preferred or deferred dividend or participation in the earnings. They are absolute in terms for payment upon a certain period of notice of loss, and hence, thereby excluding the suggestion of any contingency, they negative the idea of the holder being a sharer or participator in losses. By their terms the holder is a creditor rather than a stockholder."

The fact that the certificates are payable at any time on thirty days' notice, and provide for the payment of a fixed and definite rate of interest, might, and probably would, under the circumstances of ordinary transactions, give character to them as absolute certificates of indebtedness. But when we consider them as issued upon the provisions of the by-laws of the association regulating the issuance of paid-up stock, we must give to them the character the law imposes upon them, and that the parties must be presumed to have intended they should have. If the association were solvent and could pay dollar for dollar of its obligations, the question would not arise; but where that condition does not exist it would be a very inequitable doctrine that one set of stockholders should receive all and the others none at all, or but a part. May the directors of

one of this class of associations, in anticipation that the association may not be able to repay to stockholders all of their contributions, in this manner issue preferred stock to one set and not to another? The policy of the law under which these associations are organized, very clearly, to our minds, forbids it.

But if the transaction were not a prohibited one, the appellee, after his long acquiescence as a stockholder and participation as such in the association's affairs, should be estopped from changing his position as a stockholder into that of a creditor, when by so doing an injury results to stockholders in the other classes.

The rate of interest named in the certificates is not a fixed and definite rate. The by-laws that authorize the issuance of the certificates expressly provide that the board of directors may change the rate of interest by giving notice by mail to all stockholders in class " E," thus neutralizing the effect of appellee's argument that the specified rate was regardless of whether profits were made or not.

We have considered all the authorities cited on either side, but while none of them are precisely in point, we regard the spirit of all the decisions as opposed to the priority claimed by the appellee. In principle, the case of Gibson v. Safety Homestead & L. Ass'n, 69 Ill. App. 485, is the same as this. There, Mr. Presiding Justice Boggs, in delivering the judgment of the court, held that paid-up stockholders could not be given priority over ordinary shareholders in the distribution of an insolvent loan association's assets. In our opinion appellee was a stockholder and not a creditor, and was not entitled to have the judgment he recovered.

Accordingly the judgment is reversed, without remanding the cause. We will make a finding of facts, if requested, for purposes of an appeal.