CHRISTOPHER COLUMBUS BUILDING AND LOAN ASS'N

*v.*

JOSEPH KRIETE *et al.*

*Opinion filed October 24, 1901.*

1. LOAN ASSOCIATIONS—*when an association is not estopped to deny liability for deposits.* A loan association is not estopped to deny its liability for money deposited with its secretary by parties upon the understanding that the association would pay interest thereon, where the secretary was not authorized to receive the deposits nor held out as having such authority, and where the association did not receive the money nor any benefit therefrom, the secretary making no record thereof on the books of the association, but keeping a private account of the deposits and paying interest in cash or by private check up to the time when he absconded.

2. SAME—*when holders of matured stock are not entitled to priority as creditors.* Intervening petitioners in a building and loan receivership who are holders of matured stock are not entitled to priority as preferred creditors, where none of them have the warrants of the association issued to pay for their stock nor hold checks upon any bank having funds of the association on deposit.

*Columbus B. & L. Ass.* v. *Kriete,* 87 Ill. App. 51, reversed in part.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

Plaintiff in error is a corporation organized in Illinois in 1884, under "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association," (Starr & Cur. Stat. 1896, chap. 32, par. 108,) and did business in Chicago until April, 1897, when, upon petition in the superior court of Cook county, it was declared insolvent and Arthur Nollau was appointed receiver. In May and June, 1897, Joseph Kriete and forty-seven others, who are the defendants in error, filed intervening petitions, each sworn to, claiming to be special creditors of said

association and entitled to preference in the distribution of its assets.   The character of the claims of the petitioners was set out in the petitions in two forms of allegation, only.   Joseph Kriete and thirty-five others, by separate petition, each "represents that he is a resident of the city of Chicago and that he *deposited* in the said Christopher Columbus Building and Loan Association, on the following date, the following sum of money:  January 11, 1897, $800, which amount, and each of them, the said Christopher Columbus Building and Loan Association promised to pay to said Joseph Kriete, his heirs or assigns, on demand, together with interest at the rate of six per cent per annum, payable semi-annually at the office of said company in the city of Chicago."   Further averring that thereby said association became and was indebted to petitioner, stating the amount of the deposit with interest added, and concluding with a prayer to be declared a depositor and outside creditor, and to be paid next after costs of administration of the estate.   Twelve of the petitions were as follows:

"Petition of............., stating that petitioner *left with,* *deposited in, loaned to* the Christopher Columbus Building and Loan Association, $....on ........, which amount said association promised to pay petitioner on demand, with interest at five per cent per year, payable semi-annually, and is indebted to petitioner in $....., which claim.....asks be allowed as the claim of an outside creditor and paid first in full after the cost of administration."

To these petitions the receiver answered, denying that the petitioners were entitled to the relief prayed; denying that they deposited, left with or loaned to said association such moneys; says they were not shareholders or members of the association, and denies that the association agreed to pay the same or interest thereon, and that whatever moneys they may have deposited was with David Sachsel, the secretary of said association, individually; that said association was not authorized or permitted by law to receive money on deposit or borrow

money and agree to pay interest thereon, and that any such acts done by it are *ultra vires.*

The chancellor, confirming the report of the master, found that Joseph Kriete, John Wendt, Frederick M. Reitz, Hannah C. Reitz, Carl W. Eckhardt, Agnes Malkowska, Alfred Lowenstein, Hannah Adlfinger, Anna Adlfinger, George C. Struve,. Michael Wendt, Margaret Weber, John Kocmata, Ferdinand Revenfeld, Carl Roeske, Mary Stein, Anton Metzger, Anastasia Schroeder, John Bergholz, John Mikes, John Graf, August Holz, John Frahm, John Metzger, Joseph Behrmann, Math. Bucher, Frank Becker, Koernier Lodge and L. Kochler, (referred to in the opinion as "Joseph Kriete and his class,") had, prior to the insolvency of said association, made deposits with it, which it agreed would be re-paid, with interest; that they were not stockholders, but that the deposits were loans, and that the amounts, with interest, were prior and superior to all other claims against the funds and assets, except the expense of administration, and so ordered their payment.    As to the petitioners Albert Truka, John J. Krauth, August Duppke, Godfried Schurz, August Czanzkowski, Heinrich Semmler, Otto Triphahn, Gottfried Karnowski, Maria B. Didier, Francis X. Lang, Otto A. Arzbacker, Julia Patzen, Carl Kadow, Joseph Bischke, John Reich, Katharina Mueller, Anna Yonovska, Kate Sabachenska, Maria Reinhardt and Albert Kilchmann, (referred to in the opinion as "Albert Truka and his class,") the master and chancellor found they were owners of shares of said association which matured prior to its insolvency and had been so declared by the directors of said association; found the amount due each upon such matured stock and decreed payment thereof, with five per cent interest, as liens prior and superior to the unmatured stock.

The case went on error to the Appellate Court for the First District, where, at the October term, 1899, (87 Ill. App. 51,) the decree of the superior court of Cook county

was reversed in part and affirmed in part, that court holding as to Joseph Kriete and the twenty-seven others who were shown to be depositors, that they had deposited, as shown by the clear weight of the evidence, with David J. Sachsel individually and not in fact with the association, and that the association received none of the money, but that if they had made their deposits with the association it was beyond the scope of authority and power of said association and *ultra vires*, and as to them reversed the decree and directed that their petitions be dismissed. As to Albert Truka and nineteen others claiming for matured stock, that court affirmed the findings and decree of the lower court. The case comes to this court on error, and plaintiff assigns error on the findings and order last mentioned, and Joseph Kriete and the other depositors assign cross-errors as to the order for the dismissal of their petitions.

Of those claiming for matured stock, Albert Truka, John J. Krauth, August Duppke, Godfried Schurz, August Czanzkowski, H. Semmler, Otto Triphahn and Francis X. Lang allege they "deposited" only, and the others allege they "left with, deposited in, loaned to" the association.

JAMES J. HOCH, and HARRY P. SIMONTON, for plaintiff in error.

EDMUND FURTHMANN, for defendants in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

The disposition of this case involves the consideration of the rights of those who were depositors, and spoken of as "Kriete and his class," and those claiming as holders of matured stock, and mentioned above as "Truka and his class."

As to the depositors, the evidence shows that David J. Sachsel was the secretary of the association from about the time of its organization to about the time of the ap-

pointment of the receiver. In the office of the association he conducted insurance, real estate brokerage, money loaning and a foreign steamship ticket agency, all on his own account. He was, paid a salary as secretary and hired and paid his own assistants, having in his employ Elsie M. Schiele as book-keeper, and Charles J. Flugel, who assisted in receiving money on the days for payment of dues. The greater part of the time the office of the association was at the residence of Sachsel. The association had out its forty-ninth series of stock. Its membership was large and they paid promptly, it appearing that near the time the receiver was applied for, out of seventy odd loans outstanding less than ten were in arrears, and those but a week or so. There was never but one foreclosure, and the cash-book showed that at the time the receiver was appointed there should have been on hand $52,317.45. Occasional deposits were made as early as 1893, but the great bulk of them were made in 1895 and 1896. As nearly as can be ascertained from the evidence, between $40,000 and $50,000 was placed in the hands of Sachsel on deposit, some of it by stockholders or members, but far the greater portion by non-stockholders. These deposits, in point of time, were made as the ordinary business man would usually make them. The account of Frederick Reitz, one of the petitioners, is a clear illustration of the method and extent of the business. From August 27, 1895, to August 3, 1896, he deposited $3381 in thirty-eight deposits, in sums from $10 to $1000, and between the time of making the first deposit and January 1, 1897, he had withdrawn $1905.50, in sums from $100 to $710, taken at six different dates.

There were about fifty depositors, comprising working women, small merchants, shop-keepers, money brokers and small dealers in real estate. To all these depositors Sachsel stated the association would pay interest,—to some five per cent and to others six per cent semi-annually,—and that each could draw his money, or any part

of it, at pleasure, without any notice to the association, request for withdrawal or payment to any one but Sachsel. The evidence further shows that most all these depositors did draw interest, some at one and some at the other of the rates above stated. When a depositor came he was given an ordinary stockholder's pass-book of the association, in which were written the name of the depositor and the date and amount of the deposit, and the word "deposit" was written above the amount; and when the deposit, or any part of it, or interest, was withdrawn or received by the depositor, a receipt was written in the pass-book, saying the holder of the pass-book had "received from David J. Sachsel" whatever sum was paid, and the holder required to sign his name to the receipt. The money thus withdrawn, and the interest when paid, were always paid by Sachsel, either in currency or by Sachsel's private check. The evidence shows that there was never a dollar of it paid upon the order of the board of directors or the ordinary money voucher of the association. The money, when received on deposit, was not placed on the cash-book or reported to the board of directors at the meetings, which were weekly, as part of the receipts, and never at any time entered into or formed any part of the current account, or was placed among the usual entries of business in the books or minutes of the association. The books of the association, in so far as they related to its legitimate business between it and its stockholders, were perfectly kept, as testified to by three expert accountants, and on their examination by agents of the State Auditor's office, made annually, (the last being September, 1896,) were found correct in every particular.

The secretary, Sachsel, kept a general ledger, which the experts say was an unnecessary book, and to which the agents of the State, in their examination, never referred, and in the back of this book, on pages 400 to 460, and between which and any other business entry or mat-

ter were three hundred blank pages, was found, after the receivership, the deposit account. It had no name or designation, but simply the names of the people and the date and amounts, debit and credit. The index to this account did not appear in the ledger among the other matters indexed, but was kept in a small pocket memorandum found in the private safe of Sachsel. Nobody connected with the association, except Sachsel and his female assistant, Elsie Schiele, knew of this account. She was a young German girl with no experience or education in book-keeping, and had been in his employ for about four years. She testified that she kept the books and made the entries as directed by him. There was no by-law or resolution by the stockholders or board of directors authorizing the receipt of these deposits, and while the evidence shows that some of the directors knew of it, it does not show that a majority of them did. There is no evidence whatever showing that the association proper ever received or used or had the benefit of a cent of this money, but the whole evidence shows the contrary. All moneys of the association, from whatever source derived, belonging properly to it, appeared in its cash-book and other books in proper and regular manner and order, and all moneys paid out by it, outside of the deposits and interest thereon, were paid upon regular vouchers, (orders issued by the association,) and were shown by the stubs, the minute book or record of meetings and the cash-book. The evidence further shows that a number of stockholders made advance payments on their stock,— that is, paid their dues, or, if borrowers, principal, interest and dues, in amounts of $50 to $100, and in some instances $500 or more, in advance of the time they were due, and let the amounts stand to their credit to meet accruing liabilities, and that in every instance these moneys properly appeared on the books of the association.

Another fact worthy of mention and appearing from the evidence is, that Karl Kronenberger, the last treas-

urer of the association, had served five or six consecutive years in that capacity. The by-laws required the secretary to pay to the treasurer, each meeting night, the moneys received since the last meeting. The secretary did receive from the treasurer, every meeting night, his receipt for the exact amount of money as shown by the cash-book, but the treasurer never, in fact, received or handled any of the money, but left the same in the hands of the secretary.

The by-laws of the association limited the loans to be made to any one stockholder to $4000. The evidence shows that in 1896, in anticipation of the visit of the State examiner, Sachsel took for the association, on pretended loans, five mortgages: one from his wife, for $6000; one from one Leshchus, $6000, and three others for $4000 each, making $24,000 in all. He placed all but the one from his wife of record, and between that and March, 1897, released and satisfied all of them. For more than a year borrowers had been turned away with the statement that the association had no funds to loan and was paying all its receipts on matured stock. In March, 1897, Sachsel admitted to the directors he was $8000 or $10,000 short in his accounts, and, pending negotiations of settlement, fled, taking, as nearly as can be found from the books, the $52,000 that should have been in the treasury as shown by the cash-book, about $14,000 for which he had falsely taken credit on the cash-book as having been paid on vouchers to holders of matured stock, and about $25,000 of these special deposits.

Most of the depositors testify that it was their understanding that they were depositing with and were to be paid by the plaintiff association both principal and interest, and some of them testify that part of their deposits were made at the time of the meeting of the board and that some members of the board knew of it, and they insist that it was within the implied power of this association to receive these deposits; that the same should

be treated as loans, and that they should be given preference over other claimants as outside creditors, and that though the evidence does not show the board formally authorized their taking or that the association received the actual benefit of the money, still the active business agent of the association received it with the knowledge of some of the directors and officers, and although Sachsel may have appropriated it all to his own use, the association is estopped to deny its liability. We are satisfied with the findings of the superior and Appellate Courts that the moneys these claimants left with Sachsel were placed with him on the theory that they were deposits in the association upon which interest was to be paid, but we hold that the association did not, in fact, receive these deposits, or any part of them, and that Sachsel, the secretary, did not have authority from the association to receive them for it, nor was he held out by the association as having such authority, and as the association did not authorize their receipt and did not receive the benefit of them it is not estopped to deny its liability and it is not bound by the unauthorized acts of Sachsel, and such claimants are not entitled to be reimbursed for such moneys out of the assets of the association.

As to Truka and those found to be holders of matured stock, the evidence shows that orders were issued by the association, payable to Albert Truka, Godfried Schurz, August Czanzkowski, Heinrich Semmler, Francis X. Lang, O. A. Arzbacker, Gottfried Karnowski, Maria B. Didier, Julia Patzen, Carl Kadow, Joseph Bischke, John Reich, Katharina Mueller, Anna Yonovska, Kate Sabachenska, Maria Reinhardt and Albert Kilchmann, for their stock, and the cash-book shows they were paid, or at least credit is there taken for them, and they aggregate nearly $14,000. The chancellor and the Appellate Court found, however, that they had never received the orders or the money for their stock, and our examina-

tion of the evidence leads us to the same conclusion. There were no orders issued to August Duppke, John J. Krauth and Otto Triphahn, but the evidence sufficiently shows their stock had matured.

It is insisted by the plaintiff in error that these stockholders are not entitled to a decree in their favor because of a variance between the allegations of their petitions and the proof. Here is a fund in the hands of the court for distribution among those entitled to it. The claimants are not in the *status* of original suitors, nor do we think the same strictness of allegation should be applied to them. We are disposed to hold that the allegations were sufficient in this character of proceeding, and find they are accordingly entitled to recover the respective amounts found due them from the association. We do not, however, concur in the finding that these claimants have prior claims or liens to the other creditors of said association. They were stockholders and members of the association, and while the evidence shows that their stock had matured, it also shows that the warrants of the association had not come to their hands, or did they, or either of them, hold a check upon any bank having the funds of the association on deposit. In fact, we are unable to find anything in the evidence that would warrant an order giving them priority. *Chapman* v. *Young*, 65 Ill. App. 131; *Gibson* v. *Safety Homestead Ass.* 170 Ill. 44.

The judgment of the Appellate Court is affirmed as to Kriete and his class, claiming for deposits, and reversed as to Truka and his class, claiming as matured stockholders, in so far as it gives them priority over the other creditors, and the cause is remanded to the superior court of Cook county with directions to enter a decree in conformity with this opinion.

*Affirmed in part and reversed in part.*