[S. F. No. 6005.   Department One.—June 21, 1913.]

PACIFIC COAST SAVINGS SOCIETY (a Corporation), by Barclay Henley et al., as the Directors of Said Corporation, its Trustees in Liquidation, Appellant, v. NELLIE STURDEVANT et al., Defendants and Respondents; D. E. LANE et al., Defendants, Appellants and Respondents.

BUILDING AND LOAN ASSOCIATION—INSOLVENCY—RIGHT TO EQUALITY OF DISTRIBUTION AMONG STOCKHOLDERS OF ALL CLASSES.—Upon the insolvency of a building and loan association, the holders of the various classes of its corporate stock are entitled to an equality of distribution of the corporate assets among themselves, in the absence of anything in the by-laws giving one class of stockholders a priority over any other class.

ID.—MATURED STOCK—NOTICE OF WITHDRAWAL—WITHDRAWING STOCK-HOLDER NOT ENTITLED TO PRIORITY.—Stockholders whose stock had matured, and who had given notice of withdrawal coupled with a demand for payment, as provided in the by-laws, prior to the judgment declaring the insolvency of the corporation, are not entitled to priority over the holders of other stock in the distribution of the assets.

ID.—BY-LAW PROVIDING ORDER OF PAYMENT OF MATURED SHARES—APPLICATION LIMITED TO GOING CONCERN.—A provision in the by-laws of the association that "matured shares shall be paid in the order of maturity," merely declares the respective rights, among themselves, of various holders of matured stock. If that clause may be given a broader meaning, it is not to be construed as creating a preference in the distribution of assets where the association is insolvent. The rights of withdrawal are so provided only while the association is a going concern.

ID.—WITHDRAWAL WHILE CORPORATION IS SOLVENT—STATUS OF CRED-ITOR MUST BE SHOWN BY PROOF OF SOLVENCY OF CORPORATION.—

Assuming that a notice of withdrawal given and accepted while the association is actually solvent gives stockholders so withdrawing the *status* of creditors after the lapse of the time required for notice, the burden is upon a stockholder seeking to show that his *status* has been changed to that of a creditor, to allege and prove the essential fact that the corporation, admittedly insolvent at the time distribution is sought, was not insolvent when the alleged right of payment accrued. In the absence of a finding on this point, or of an issue framed to invoke such finding, it must be presumed, in support of a judgment decreeing equality of distribution of the corporate assets among all the stockholders, that the association was insolvent when the withdrawing stockholders entered their matured shares for withdrawal, and that they accordingly stand in the same position as other shareholders.

ID.—ACTION BY TRUSTEES TO DETERMINE RIGHTS OF STOCKHOLDERS TO DISTRIBUTION—PART ONLY OF STOCKHOLDERS MADE DEFENDANTS—FORM OF JUDGMENT.—Where the trustees of an insolvent building and loan association institute an action to have a determination of the rights of each class of stockholders in the distribution of the corporate assets, and by reason of the destruction of the records of the corporation are unable to join as parties defendant all of the stockholders, and therefore made defendants only a certain number thereof as representatives of each class, a judgment was properly rendered decreeing that the claims of all classes of stockholders represented by the various defendants were entitled to share *pro rata* in the balance remaining in the hands of the trustees, without restricting the right of distribution only among those stockholders who appeared in the action.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Reed, Black & Reed, Bernard Silverstein, Thomas M. Diviny, for Defendants and Appellants.

Samuel Rosenheim, and Barclay Henley, for Appellant Trustees.

George F. Hatton, Hartley F. Peart, and Selvage & Cutten, for Defendants and Respondents Mark S. Taylor et al.

Henry French, for Defendant and Respondent W. C. Edwards.

SLOSS, J.—The Pacific Coast Savings Society was incorporated in January, 1891. Its general purposes, as defined in the articles of incorporation, are described in the opinion of this court in the recent case of *Groover* v. *Pacific Coast Savings Society,* 164 Cal. 67, [127 Pac. 495]. In the consideration of the questions presented by the appeals now before us, it may be assumed that the society is a building and loan association, as it has been treated by all of the parties to the litigation.

After its organization the society adopted a code of by-laws and commenced to transact business. On the nineteenth day of February, 1905, the attorney-general commenced a suit in the name of the people against the society as defendant, and on the first day of March, 1905, a judgment was entered adjudging that the society was insolvent and enjoining it from the further transaction of business. Ever since the entry of such judgment, which has become final, Barclay Henley and four others have been acting as directors and trustees in liquidation of such society.

The present action was instituted by said trustees in the name of the society for the purpose of obtaining a decree determining the rights of the various claimants to the residue of the funds of the society remaining in the hands of said trustees. The books of the society had been destroyed in the conflagration of April, 1906, and the trustees were not, at the time of instituting their action, in a position to name all of the stockholders and others who might be interested in the distribution of the assets. They accordingly selected a certain number of persons belonging to each of the various classes affected and sought in this action to have a determination of the rights of each class. The defendants appeared and filed their answers and cross-complaints and the action was tried before the court. The court made its findings and upon these reached the conclusion of law that claims of all classes represented by the various parties defendant were entitled to share *pro rata* in the balance remaining in the hands of the trustees. Judgment was entered accordingly. From this judgment the plaintiff appeals. An appeal was also taken by the defendants D. E. Lane and wife, J. M. Blodgett, A. M. Williams, and Daisy Farnsworth.

CLXV Cal.—44

It appears that at the time of the judgment declaring the insolvency of the society certain mortgages and other property of the society were held by various creditors as security for their advances. The trustees have realized upon these securities and out of the proceeds have paid the secured creditors. These creditors were unquestionably entitled to priority in the distribution of the funds resulting from the sale of their securities, and no question as to their rights now arises. In one of the briefs an attack is made upon the payment of these secured creditors, but such attack is not based upon anything appearing in the pleadings or the proof. The secured creditors were not made parties to this action and we could not here consider any attack upon the proceedings resulting in the payment of their claims.

The questions before us have to do solely with the rights of the persons who dealt with the society as stockholders. Under the by-laws shares of stock were divided into five classes: class A, ordinary installment shares; class B, prepaid shares; class D, definite contract loan shares; class E, installment shares, and a fifth class, not designated by any letter, but described in the by-laws as "fully paid up coupon shares." Class A stock was the ordinary installment stock of a building and loan association. Under the by-laws monthly installments of not less than sixty cents a share were to be paid by the stockholders, and the face value of the stock was to become payable to the stockholder in cash when the amount paid in, and the *pro rata* share of profits in excess of expenses and membership fees and any losses which might occur, should equal one hundred dollars. Class E stock was the same, except that the monthly installments were to be not less than fifty cents a share instead of sixty cents as in the case of the class A stock. Class B stock was stock upon which fifty dollars per share was paid in advance in lieu of monthly installments. Dividends were payable on this stock semi-annually at the rate of five per cent per annum on the fifty dollars paid, and the stock was to mature and to be payable at the face value when the amount paid in, together with the profits in excess of dividends or advances and its portion of the losses, expenses, and membership fees, should equal one hundred dollars. Class D stock was installment stock, maturing like other installment stock, but was to be issued only to

borrowers on mortgage security. The "fully paid up coupon shares" were issued upon payment of the face amount in full. Such shares had attached to them coupon warrants for interest and the holder was entitled to receive the face value of his certificate, together with any profits accrued, upon the maturity of the last coupon. The society also issued, as the court finds, certificates known as class F stock, permitting the shareholder to make savings payments to the society and have the same credited on account of the certificate, such certificate to mature when the payments made, together with earnings and interest, should equal one hundred dollars.

Section 13 of the by-laws authorized withdrawals by investing members after one year from date of first payment, upon sixty days' notice, if such notice was required by the board of directors. Applications to withdraw were to be filed in the order received, and paid in the order filed. Matured shares were to be paid in the order of priority of maturity.

The balance of money remaining in the hands of the trustees, after the payment of the claims of the preferred creditors, was not sufficient to pay the demands of all the stockholders in full. Indeed, it was sufficient to pay only a small percentage of the claims. Among the claimants were holders of class A stock, of class B stock, of class E stock, of class F stock, and of coupon stock. None of this stock had matured except a portion of the class A stock, and of this matured class A stock a portion had matured and become payable prior to the first day of January, 1905, and demand for the payment thereof had been made. The appellants Lane, Blodgett, Williams, and Farnsworth are holders of such matured class A stock, which had been entered for withdrawal prior to the judgment declaring the insolvency of the society. These appellants claim that by the maturity of their stock, coupled with their demand for payment, their *status* had been changed from that of stockholders to that of creditors of the society, and that they are therefore entitled to priority over the holders of other stock in the distribution of the assets. It is not to be doubted that holders of stock of the other classes, none of which had matured, all stood on an equal basis and should share in the proceeds *pro rata.* (Endlich on Building Associations, 2d ed., sec. 514.) There was nothing in the by-laws giving any of such stockholders a

priority over any other and the general rule of equality of distribution furnishes the guide for the division of the assets among them.

But were the holders of the matured class A stock which had been entered for withdrawal prior to the judgment declaring the corporation insolvent in any better position than other stockholders? In other words, did they, by demanding payment of the value of their matured shares, cease to be stockholders and become creditors? The authorities on this question are somewhat in conflict but we think the better view is that followed by the court below,—namely, that when the corporation becomes insolvent all stockholders, including those who have given notice, pursuant to the by-laws, of withdrawal, stand upon an equal footing. The theory upon which this view is to be sustained is well stated in the following quotation from Endlich on Building Associations (2d ed., sec. 514) : "The truth is that there is implied, in the very essence of the building association scheme, an agreement between the members of every association, in the light of which all other agreements, and all rules and by-laws, must be read, and to which they must be conformed; and that is the agreement that all burdens shall be equally borne, as well as all profits equally shared—that the whole enterprise shall be conducted and the rights and obligations of the participants in it shall be adjusted on a basis of strict mutuality, equality, and fairness. To permit one member, or one set of members, to be paid in full at the expense of others who get less is not to carry out that scheme or agreement, unless there is something which gives the former an equity superior to the latter, whereby they have a better and stronger claim upon the property of the association. Where one has subscribed to and paid up stock upon a distinct understanding that it is to be preferred over others that have paid less, there is such a superior equity. But there is nothing in the mere fact that one has given a certain number of days' notice that he wants his money, whereby he is, *ipso facto,* invested with an equity to receive it superior to that of one who has not given such notice. There is, therefore, nothing to counterbalance, much less outweigh, the inequitableness, of permitting him to take the fund belonging to his fellows in order to pay himself." And the learned author goes on to quote with approval the

following declaration of the supreme court of Pennsylvania in *Christian's Appeal,* 102 Pa. St. 184, 189: "When a building association has failed to fulfill the objects of its creation and has become hopelessly insolvent . . . after expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the funds should be distributed, *pro rata,* among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof or not. Both classes are equally meritorious, and in marshalling the assets neither is entitled to priority over the other. The claims of each are alike based upon their relation to the association as members thereof." And, concluding the discussion, Mr. Endlich goes on to say: "It is but a logical carrying out of this principle, that in cases of insolvency of associations in which a question of distribution can arise between holders of matured and holders of unmatured stock—e. g., in a serial association—no preference is to be accorded to the former, but both classes are to share *pro rata* in what is left after satisfying outside creditors, other preferred claimants being out of the way. In short, the order prescribed by the by-laws of a building association for the payment of money out of its treasury to the different classes of holders of ordinary stock in the regular course of its business, does not apply to the distribution of its assets when insolvent. . . . The basis of the distribution, in such cases, is not the rule of the association expressed in its by-laws, standing alone, but the supreme rule of equality and mutuality, and the controlling inquiry is the amount paid in by the member, not the date of the issue of his stock nor that of its maturity or of any notice to withdraw."

While these views are not universally held by the courts, they are supported by several well considered cases. (*Criswell's Appeal,* 100 Pa. St. 488; *Christian's Appeal,* 102 Pa. St. 184; *Columbus B. & L. Assoc.* v. *Kriets,* 192 Ill. 128, [61 N. E. 510]; *Mutual B. & L. Assoc.* v. *Stolz,* 93 Ill. App. 164; *Coltrane* v. *Baltimore B. & L. Assoc.,* 110 Fed. 281; *Hohenshell* v. *Home B. & L. Assoc.,* 140 Mo. 566, [41 S. W. 948]; *Rabbitt* v. *Wilcoxen,* 103 Iowa, 35, [64 Am. St. Rep. 152, 38 L. R. A. 183, 72 N. W. 306]; *Leahy* v. *Natl. B. & L. Assoc.,* 100 Wis. 555, [69 Am. St. Rep. 945, 76 N. W. 625],) Some

of these cases dealt with the claims of holders of matured stock, some with those of holders of fully prepaid stock. Notice of withdrawal had not been given in all cases. But where such notice had been given, it was held that no priority of right accrued to the stockholder in case of actual insolvency, even though his notice had been given before he had knowledge of the insolvency or before proceedings had actually been taken.

The by-laws, in the case at bar, did not assume to give to the holders of matured shares any priority over other shareholders. All had a right to be paid upon withdrawal. The provision that "matured shares shall be paid in the order of maturity" merely declares the respective rights, among themselves, of various holders of matured stock. But if the clause may be given a broader meaning it is not to be construed as creating a preference in the distribution of assets where the association is insolvent. The rights of withdrawal "are provided for with respect to going concerns only." (*Reddick* v. *United States B. & L. Assoc.*, 106 Ky. 94, [49 S. W. 1075]; *Hohenshell* v. *Home B. & L. Assoc.*, 140 Mo. 566, [41 S. W. 948].)

It is contended that the notices given by Lane, Blodgett, Williams and Farnsworth were given not only before the judgment declaring the society to be insolvent, but before in fact there was any insolvency. There is, however, no finding to this effect, and the pleadings of these appellants do not contain any such allegation. While it may be true as a general proposition that solvency is presumed, we think no such presumption should be indulged to overthrow a judgment or to withdraw a case from the operation of the general rule of equality of distribution. Assuming that a notice of withdrawal given and accepted while the society is actually solvent gives stockholders so withdrawing the *status* of creditors after the lapse of the time required for notice, we think the burden is upon a stockholder seeking to show that his *status* has been changed to that of a creditor, to allege and prove the essential fact that the corporation, admittedly insolvent at the time the distribution is sought, was not insolvent when the alleged right of payment accrued. In the absence of a finding on this point or of an issue framed to invoke such finding, it must be presumed, in support of the judgment,

that the association was insolvent when these appellants entered their matured shares for withdrawal and that they accordingly stand in the same position as other shareholders. In this view the case is not distinguishable from *Hohenshell v. Home B. & L. Assoc.,* 140 Mo. 566, [41 S. W. 948] ; *Criswell's Appeal,* 100 Pa. St. 488; *Christian's Appeal,* 102 Pa. St. 184, and the court below made an equitable adjudication in ordering the remaining assets distributed *pro rata* among stockholders of all classes.

It is suggested in one of the briefs that the distribution should be only among those stockholders who appeared in the action. But under the circumstances of this case such distribution would work a manifest injustice. On account of the destruction of the books, the trustees, in instituting the action, could not and did not undertake to bring in all the stockholders. The professed purpose of the suit was to obtain a decree declaring the rights of the various classes. The action was brought and adjudicated upon this theory, and the court would not have been justified in excluding from participation stockholders who had not been made parties and who had not been called upon to assert their rights in this proceeding.

The judgment is affirmed.

Angellotti, J., and Shaw, J., concurred.