FIDELITY SAVINGS & LOAN ASS'N v. BURNET, Commissioner of Internal Revenue.

No. 5719.

Court of Appeals of the District of Columbia.
Argued March 9, 1933.
Decided April 24, 1933.

Rehearing Denied May 26, 1933.

L. L. Hamby, of Washington, D. C., for appellant.

G. A. Youngquist, Sewall Key, John H. McEvers, W. C. Thompson, C. M. Charest, and Prew Savoy, all of Washington, D. C., for appellee.

Orrick, Palmer & Dahlquist, of San Francisco, Cal., amici curiæ.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant is a building and loan association organized under the laws of California. In its income tax returns it deducted as a part of its expenses sums paid to its stockholders semiannually for the years 1921 to 1926, inclusive. The Board decided against the claim, and the question we have to decide is whether amounts paid by appellant to the holders of its "passbook stock" and/or its "full-paid capital stock" were nondeductible dividend distributions or were interest payments.

The applicable statute is section 234 (a) of the Revenue Act of 1921, 42 Stat. 227. (The provisions of the act in the subsequent years are identical.) The section provides: "That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * * (2) All interest paid or accrued within the taxable year on its indebtedness. * * * "

Appellant was authorized to issue 250,000 shares of capital stock with a par value of $100 each, or a total authorized capital of $25,000,000. Its capital stock structure was divided into classes, including installment stock, of which there were three classes, A, B, and C; full-paid stock, known as class D; permanent stock, known as class E; passbook stock known as class F; and permanent reserve stock, known as class G. The two classes of stock involved here are full-paid stock and passbook stock. The full-paid stock was issued at $100 on full payment in advance. The passbook stock was payable both in time and amount of installment at the option of the subscriber. At the expense of space, but in the interest of clarity, it is thought desirable to insert as a footnote a sample form of each of these two classes of stock.[1] The by-laws of the corporation provide as to the full-paid stock that the corporation would pay cash dividends at a rate not exceeding 7 per cent. per annum. As a matter of fact the stock was issued on a 6 per cent. basis, without further participation in earnings or profits. It was redeemable by the association at the expiration of five years on six months' advance notice, and it might be surrendered by the holder at face and interest at any time

---

[1] Full-paid stock:

"This certifies that ——— is the owner of One Share of the Capital Stock of the Fidelity Savings and Loan Association amounting to One Hundred Dollars, which has been fully paid.

"This certificate is issued to and accepted by the owner hereof upon the following terms and conditions:

"First: That the amount for which this certificate is issued shall bear interest at the rate of Six Per Cent (6%) per annum, payable semi-annually at the office of the Association in the City of Los Angeles, on presentation and surrender of the annexed coupons as they severally become due.

"Second: The Fidelity Savings and Loan Association reserves the right, on or after the expiration of five years from the date hereof, to pay this Certificate on any interest payment date, upon mailing, to its recorded owner, written notice, six months prior thereto, and thereupon said principal sum shall become due and shall be paid upon the presentation and surrender of this Certificate and all unpaid coupons to the Association at its office in the City of Los Angeles, and it may be surrendered, after one year, upon three months notice, for a sum which with interest previously paid shall equal its face value with interest from the date hereof, to date of withdrawal.

"Third: In consideration of the rate of dividend paid hereon, it is agreed that this certificate shall not further participate in any surplus or earnings or profits.

"This Certificate may be transferred by endorsement and record thereof on the Association's books acknowledged hereon."

Coupon attached to full-paid certificate:

"$3.00

"The Fidelity Savings and Loan Association will pay the Bearer Three Dollars at its office in the City of Los Angeles, California, Interest on Certificate."

Passbook shares:

"This certifies that ——— a member of the Fidelity Savings and Loan Association, has subscribed for and is the owner of Certificate for One Hundred Savings Pass-Book Shares of the par value of one hundred dollars each, on which dues payments may be made at any time and in any amount not less than one dollar, at his option, until the full par value of the shares has been paid, unless sooner withdrawn. Dividends from the earnings of the Association will be credited semi-annually, computed on the minimum monthly balance, at the rate of five per cent per annum, on the second Monday of July and January of each year.

"All payments, together with the dividends credited and accrued, may be withdrawn on demand, excepting that the Association reserves the right to require reasonable notice of intention to withdraw not in conflict with its By-Laws.

"This Certificate is issued subject to the Articles, By-Laws and Rules of the Fidelity Savings and Loan Association and is non-negotiable and is transferable only on the books of the Association, and no payment will be received and no withdrawal paid without the presentation of this Certificate."

upon three months' notice. The by-laws of the association provide as to the passbook stock that dividends will be declared out of the earnings semiannually at a rate fixed by the board of directors not to exceed 5 per cent. The stock was retirable by the board of directors at any time on 30 days' notice, and the holder was given the right to withdraw the amount paid in by him at any time on reasonable notice.

Appellant's position is that the payments made semiannually from time to time by the association to the holders of these two issues of stock constituted interest which under section 234 is deductible. The Commissioner insists that the payments were dividends, and likens the holders to preferred stockholders in an ordinary corporation. The difference in position between appellant and the Commissioner involves the determination whether the subscribers of appellant's shares of the classes named were stockholders or were creditors.

The answer is not as simple as the statement of facts just made would indicate. The difficulty grows out of the fundamental differences between an ordinary corporation and a building and loan association. Both, of course, are controlled by charter, by-law provisions, and by statutes of the state of incorporation, but in the case of an ordinary corporation there are certain basic rules of construction which are of universal or nearly universal application, so that well-understood definitions of stockholder and creditor and of interest and dividends apply, but the structure of a building association is in many important respects different from commercial corporations, and equally as different in different states. It is therefore in a marked degree essential in answering the question to look to the language of the stock certificate, the by-laws of the corporation, and the laws of the state under which the charter was granted. Speaking generally, building associations are either the "mutual" or the "guaranty stock" type. In case of the former, the basic characteristic is that the association is conducted on the co-operative plan with mutual advantages and benefits to its members who share alike in the profits and losses. In the case of the latter, the stock is permanent, in the sense that it remains as a part of the capital in all respects like the stock of business corporations, and the theory of mutual benefit, namely, the lending of money exclusively to its members to enable them through co-operation to buy or build homes of their own, is not the capstone, but money making,

as in the case of an ordinary corporation, is the real objective. Appellant is neither the one nor the other. It is not a purely mutual company, because it lends money to whoever is able to borrow without regard to membership in the association. It is not a purely guaranty stock corporation, because, in addition to guaranty stock, it issues a half dozen other classes as well. In the case of a mutual association there is no doubt, we think, that the money, whether it be called dividends or interest, which is paid by the association to the holders of shares of stock annually or semiannually on account of their stockholdings, is a dividend, and this is true because in such associations all classes of stockholders vote at stockholders' meetings, share in the earnings, are eligible to office in the corporation, and, in the event of the insolvency of the corporation and the winding up of its affairs, are entitled only to share in the residue of the assets after the payment of debts. So also in the case of guaranty stock corporations issuing only that class of stock—which, as we have seen, is permanent and nonwithdrawable and therefore a part of the capital of the business—the payments by the association, whether called interest or dividends, are obviously the latter.

But it is contended on behalf of appellant that the rule applicable to mutual and guaranty companies does not apply to it, but that, in view of the different classes of stock issued by it, each class should stand on its own bottom and be judged by the terms and conditions of its issue; that, as to its permanent stock which shares last in the profits, money paid by the association on its account is a dividend, but that, as to the two classes here involved, the agreement of the association to pay a fixed sum annually coupled with the right of the holder to withdraw and obtain a return of his investment puts these issues in a different class, and that the holders are creditors and the semiannual return is interest.

Appellant relies in large measure on a decision of the District Court of Southern California in Re Western States Building-Loan Association, 50 F.(2d) 632. The question involved there was the right of shareholders of a building association to file claims as creditors in a bankruptcy proceeding. The stock holdings of the petitioning creditors were like that involved here, and the insolvent in that case was an association issuing both redeemable and nonredeemable shares. Referring to the California law, Judge James says that it is there provided that the guar-

anty stock shall protect not only creditors but other nonpermanent stock as well. He therefore concludes from this that as to passbook and full-paid stock the California law, in the event of insolvency, makes the corporation a debtor. But it should be borne in mind that the question decided in that case related to the status of a nonpermanent shareholder of the corporation as of the time of insolvency. There the association was admittedly bankrupt and unable to function and had been placed in the hands of an equity receiver, and the question was whether the holder of withdrawable stock was a creditor who could file a petition in bankruptcy. That the relationship of debtor and creditor in such a case exists is not decisive of the question here. Undoubtedly under the provisions of the California law the withdrawable stockholder of a guaranty company, when the association becomes insolvent, is entitled to share in the assets of the corporation ahead of the holder of guaranty stock; in other words, as between these two classes, the guaranty stock, by reason of the statute, protects the other class of stockholders, and the remaining assets, after the payment of debts at the time of the insolvency, become impressed with a trust for the benefit of this class.

But that case is easily distinguishable from this, for here we have a going company which by the laws of California is permitted to issue shares of stock the holders of which may, if the company should so declare in its by-laws, withdraw part or all of their investment upon terms there prescribed. But the California law also declares that the amount contributed by the stockholders either in the purchase of paid-up shares or installment shares shall be capital in the hands of the corporation. Sections 633 and 634, Civil Code of 1923.[2] Appellant's theory on the

[2] Sec. 633. *Powers of building and loan associations.*—"Building and loan associations, as hereinafter in this title defined, shall have power to receive money and accumulate funds to be loaned; * * * to permit shareholders and investors to withdraw part or all of their payments, investments or stock deposits, and to prescribe the terms and conditions of such withdrawal; to cancel shares of stock, the payments on which have been withdrawn; to receive money and to execute certificates therefor, which must specify the date, amount, rate of interest, and when the principal and interest are payable, and also the withdrawal value thereof at the end of each year; * * * and shall have such further powers as may be specifically set forth under this title. * * *"

Sec. 634. *Capital.*—"The capital of every such corporation shall be divided into shares of the matured or par value of one hundred or two hundred dollars each, as provided by the articles of incorporation, and shall be paid in by the subscribers in the manner provided by the by-laws. All such payments shall be called dues. Certificates shall be issued to each shareholder on the first payment of dues by

contrary is that only the amounts of money paid for permanent or guaranty stock become capital of the corporation, and this, as we have seen, is directly contrary to the statute.

■ Nor do we think there is any validity to appellant's contention that, because the full-paid and passbook stock dividends were agreed to be paid at a definite rate, a different result obtains. The by-laws and the California law both provide for the payment of the same out of earnings, and admittedly in this case they were paid out of earnings, because in all the years in question the guaranty stock received much larger dividends than the classes bearing a fixed and definite return, and from this we may safely assume that the association's earnings were amply sufficient to meet and were in fact used for the agreed payments to full-paid and passbook stockholders. The mere fact that a corporation agrees to pay a definite, fixed sum to a certain class of stockholders does not change the status of such stockholders to that of creditors.

In the case at bar the stock certificate issued in the case of passbook stock provides that dividends are payable out of earnings, and in the case of full-paid stock the language of the certificate is: "In consideration of the rate of dividend paid hereon, it is agreed that this certificate shall not further participate in any surplus or earnings or profits."

Neither of these provisions is inconsistent with the well-known custom of preferred stock issues in commercial corporations, but appellant says that notwithstanding these provisions, the company in fact regarded its obligation as a guaranty and actually paid dividends to these two classes of stock without regard to its earnings, and from this it is argued that the intent of the parties may be ascertained and that this intent is controlling. We think not. Without discussing this subject further, we think it enough to say, as we have already said, that in all the years in question the earnings were used to pay the dividends, and any other course than this would have been violative of the association's by-laws as well as violative of the California law.

him. Shares pledged as security for the payment of a loan shall be called pledged shares, and all others, free shares. All shares matured and surrendered or canceled, shall become the property of the corporation and may be reissued. The capital shall consist of the accumulated dues, together with the apportioned profits of the corporation, and shall be accumulated by the issuance of shares in any one or more of the following forms, viz.: 'Installment shares,' 'full paid shares,' 'passbook shares' and 'guarantee stock.'"

We are likewise of opinion that the difference in the rights and privileges of the different classes of stock is not material. This is true also of most commercial corporations where more than one class of stock is issued. Here the full-paid shares, in consideration of an agreed rate of dividend and in consideration of a definite contract of redemption at a definite time, received in prosperous times less of the earnings of the corporation than the guaranty stock. So also in the event of dissolution or insolvency the holders are entitled to share in the assets after the payment of the debts of the corporation ahead of the holders of the permanent stock. As against these advantages the permanent stock has the chance of larger returns if the profits justify, but the owner of both types continues to occupy the status of shareholder, at least until misfortune overtakes the association.

In Pacific Coast Sav. Soc. v. Sturdevant, 165 Cal. 687, 133 P. 485, 49 L. R. A. (N. S.) 1142, a building association had become insolvent. Certain of its stockholders who had the right of withdrawal had given notice of their intention to withdraw. The question was, Did they, by virtue of this notice, change their position from stockholders to creditors, or, as stated by the Supreme Court of California, did they by this fact cease to be stockholders and become creditors. The court answered this question in the negative. It is quite true in that case no guaranty stock had been sold and issued, and therefore the provisions of the law subordinating that stock to the other stock did not apply, but the principle decided was conclusive of the legal relation of such shareholders to the association, that is to say, that they did not occupy to the association the same aspect as a depositor to a savings bank. And this, it seems to us, is necessarily correct, for, if it were held that the fact of the issue by the association of permanent stock itself made all other classes of stock debts, and all other stockholders creditors, it might, by the issuance of a negligible amount of guaranty stock relieve practically all of its assets from liability to general creditors except upon an equality with shareholders participating in the conduct of the association's affairs. Hence it would seem to us that the fact of the issue by the company of guaranty stock has no such significance as is claimed.

Nor do we think, as has been already intimated, that the right of withdrawal affects the question. The passbook and full-paid stock was issued as stock and was issued pursuant to by-laws and state laws permitting it to participate in the earnings of the corporation. Its holders, as long as their investment remains, have all of the characteristics of stockholders of an ordinary corporation, though, by virtue of the peculiar construction of building associations under the law, they may have privileges and rights which do not generally apply.

In many cases it has been decided that a shareholder of a building association who has the right of withdrawal and who has also become a borrower of the company is a debtor as to the loan made and a stockholder as to the stock subscribed, so that, in the event of the association's insolvency, the payments made on the latter account may not be set off against the debt. Coltrane v. Blake (C. C. A.) 113 F. 785, and cases cited; Henry v. Continental Bldg. Ass'n, 156 Cal. 667, 105 P. 960; Groover v. Pacific Coast Society, 164 Cal. 67, 127 P. 495, 43 L. R. A. (N. S.) 874, Ann. Cas. 1914B, 1261.

In the view we take of this case, there is, we think, neither in the certificates of stock, nor in the by-laws, nor in the local law, anything which would justify us in saying that a member of the association holding these shares was, during any of the time involved in this dispute, in the position of creditor of the association. He received his agreed share of the earnings, and, if misfortune overtook the association, his investment was subject to the payment of its debts. He could participate in the management of the corporate affairs. He had, it is true, the advantages of withdrawal which the holder of permanent stock did not have, but this advantage accrued only during the solvency of the corporation. He did not withdraw, and, had the company become insolvent, he could neither have set off the amount of his subscriptions against his indebtedness to the company nor could he have shared in the assets on an equality with creditors. His position, though still superior to that of the permanent stockholder, was subordinate to that of the creditor, and therefore until insolvency the character of stockholder continued to exist and the rights of creditor, which in a case of insolvency may be said to arise, applied only to the assets remaining after the payment of the claims of the creditors generally.

From this it follows that the money which was received from the association from time to time was not interest as that term is used in the federal taxing statutes, and appellant was therefore not entitled to deduct it as an expense of the business.

It follows, therefore, that the decision of the Board of Tax Appeals is right and should be affirmed.

Affirmed.

The CHIEF JUSTICE took no part in the consideration and decision of this case.